UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

CLINT ALLAN McGOWAN,

                Petitioner,                Case No. 1:13-cv-904

v.                                      Honorable Paul L. Maloney

DUNCAN MACLAREN,

                Respondent.

_____/

## REPORT AND RECOMMENDATION

      This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C. § 2254.  Petitioner Clint Allan McGowan is presently incarcerated at the Saginaw Correctional Facility in Freeland, Michigan.  On October 26, 2006, a Montcalm County Circuit Court jury convicted Petitioner of felony murder, MICH. COMP. LAWS § 750.316(b), receiving and concealing weapons, MICH. COMP. LAWS § 750.535b, and two counts of felony-firearm possession, MICH. COMP. LAWS § 750.227b.  On November 20, 2006, the court sentenced Petitioner to life imprisonment for the murder conviction, three to ten years for the receiving-and-concealing conviction, and two years for each of the felony-firearm possession convictions.

      Petitioner appealed his convictions and sentences to the Michigan Court of Appeals.  On December 15, 2009, following multiple remands to the circuit court for consideration of additional evidence, the Michigan Court of Appeals affirmed Petitioner's convictions and sentences.  Petitioner applied for leave to appeal to the

Michigan Supreme Court.  On June 28, 2010, that court denied leave.  Petitioner did not apply to the United States Supreme Court for a writ of certiorari.

Petitioner then filed a motion for relief from judgment in the circuit court.  The court denied the motion on February 10, 2012.  Petitioner sought leave to appeal the denial in the Michigan Court of Appeals and then the Michigan Supreme Court.  Those courts denied leave on January 3, 2013, and July 30, 2013, respectively.

Petitioner filed his habeas petition (ECF No. 1), on August 19, 2013.  On October 27, 2013, he filed an amended petition (ECF No. 6), pursuant to the Court's order.  On April 25, 2014, Respondent filed an answer to the amended petition.  (ECF No. 10.)  On April 28, 2014, Respondent filed the state-court record, pursuant to Rule 5, RULES GOVERNING § 2254 CASES.  (ECF No. 11.)[1]

---

[1]The Rule 5 materials include several transcripts of the trial court proceedings.  The transcripts shall be referenced as follows:

| | |
|---|---|
| April 13 & 25, May 22 &25, and July 17, 2006 Pretrial Hearing Transcripts | (Pretrial Hr'g Tr., ECF No. 11-3, PageID.___) |
| September 11, 2006 Trial Transcript  (Volume 1) | (Trial Tr. I,  ECF No. 11-4, PageID.___) |
| September 12, 2006 Trial Transcript  (Volume 2) | (Trial Tr. II, ECF No. 11-5, PageID.___) |
| September 13, 2006 Trial Transcript  (Volume 3) | (Trial Tr. III, ECF No. 11-6, PageID.___) |
| September 14, 2006 Trial Transcript  (Volume 4) | (Trial Tr. IV, ECF No. 11-7, PageID.___) |
| September 25, 2006 Trial Transcript  (Volume 5) | (Trial Tr. V, ECF No. 11-8, PageID.___) |
| September 26, 2006 Trial Transcript  (Volume 6) | (Trial Tr. VI, ECF No. 11-9, PageID.___) |
| September 27, 2006 Trial Transcript  (Volume 7) | (Trial Tr. VII, ECF No. 11-10, PageID.___) |
| September 28, 2006 Trial Transcript  (Volume 8) | (Trial Tr. VIII, ECF No. 11-11, PageID.___) |
| September 29, 2006 Trial Transcript  (Volume 9) | (Trial Tr. IX, ECF No. 11-12, PageID.___) |
| October 23, 2006 Trial Transcript  (Volume 10) | (Trial Tr. X, ECF No. 11-13, PageID.___) |
| October 24, 2006 Trial Transcript  (Volume 11) | (Trial Tr. XI, ECF No. 11-14, PageID.___) |
| October 25, 2006 Trial Transcript  (Volume 12) | (Trial Tr. XII, ECF No. 11-15, PageID.___) |
| October 26, 2006 Trial Transcript  (Volume 13) | (Trial Tr. XIII, ECF No. 11-16, PageID.___) |
| November 20, 2006 Sentencing Transcript | (Sentencing Tr., ECF No. 11-17, PageID.___) |
| January 14, 2008 Post-trial Hearing Transcript | (Post-trial Hr'g I, ECF No. 11-19, PageID.___) |
| September 26, 2008 Post-trial Hearing Transcript | (Post-trial Hr'g II, ECF No. 11-22, PageID.___) |
| October 8, 2008 Post-trial Hearing Transcript | (Post-Trial Hr'g III, ECF No. 11-23, PageID.___) |
| February 20, 2009 Post-trial Hearing Transcript | (Post-Trial Hr'g IV, ECF No. 11-24, PageID.___) |
| June 5, 2009 Post-trial Hearing Transcript | (Post-Trial Hr'g V, ECF No. 11-25, PageID.___). |

In his amended petition, Petitioner raises the following issues:

I.      The prosecutor prejudiced petitioner denying a fair trial with improper argument.

II.     Petitioner denied due process and right to present a defense by the trial court's refusal to appoint an expert to assist the defense.

III.    Petitioner denied fair trial by exclusion of alibi witnesses for lateness and sequestration violation.

IV.     Petitioner was denied a fair trial by the failure to order separate trials or at a minimum to order a separate jury for Petitioner.

V.      Petitioner was denied the effective assistance of trial counsel.

VI.     Petitioner was denied the effective assistance of appellate counsel.

(Am. Pet., ECF No. 6, PageID.133-141.)   Upon review and applying the AEDPA standards, I find that Petitioner's claims are without merit.  Accordingly, I recommend that the petition be denied.

## Factual background

On July 24, 2002, Floyd Balyeat and his brother-in-law Adrian Carson were mowing the lawn at the home of Henry Marrott at the corner of Black Road and Kimball Road outside of Trufant, Michigan.  (Trial Tr. II, ECF No. 11-5, PageID.1252-1255.)  Floyd was taken aback by the odor and a cloud of flies outside the house and inside the house on the windows.  (*Id.*, PageID.1255-1256.)  He opened the front door to investigate and discovered the decomposing body of Mr. Marrott.  (*Id.*, PageID.1257-1258.)

The investigation revealed that Mr. Marrott had been beaten and that the beating led to his death.  (Trial Tr. V, ECF No. 11-8, PageID.1756-1767.)  The physical

evidence at the crime scene yielded no clues as to the perpetrators of the crime.  The crime went unsolved for years until testimony offered in connection with a one-man grand jury broke the case open.

A group of six people were at Mr. Marrott's house when he was beaten.  Three of the six, Michael Hansen,[2] Melissa Mudget,[3] and Tara Waldorf,[4] provided testimony regarding the incident before the grand jury and testified as part of the prosecution's case at trial.  All three acknowledged significant methamphetamine or other drug or alcohol use at the time of the crime.  They acknowledged in their testimony, and aptly demonstrated as they offered their testimony, that their memories were significantly compromised by their drug or alcohol use. (Trial Tr. V, ECF No. 11-8, PageID.1808-1809, 1868, 1915; Trial Tr. VII, ECF No. 11-10, PageID.2510, 2524, 2527, 2553; Trial Tr. IX, ECF No. 11-12, PageID.2824.)

---

[2]Hansen pleaded guilty to second degree murder.  (Trial Tr. V, ECF No. 11-8, PageID.1809.)  He is serving a sentence of 22 years, 6 months to 50 years for the murder.  (*Id.*,PageID.1862; *see also*  http://mdocweb.state.mi.us/OTIS2/otis2profile. aspx?mdocNumber=448120) (last viewed March 31, 2017.)

[3]Mudget was Heath McGowan's ex-girlfriend and the mother of his child.  (Trial Tr. VII, ECF No. 11-10, PageID.2464.)  She pleaded guilty to accessory after the fact for a murder.  (*Id.*, PageID.2465-2466.)  She negotiated a sentence of three years' felony probation and a fine.  (*Id.*, PageID.2485.)

[4]Tara was the younger sister of Melissa Mudget's boyfriend.  (Trial Tr. IX, ECF No. 11-12, PageID.2817.)  She also pleaded guilty as an accessory after the fact for a murder.  (*Id.*; PageID.2817, 2842.)  She was sentenced to probation under the Holmes Youthful Trainee Act.  (*Id.*, PageID.2825.)  The Holmes Youthful Trainee Act "give[s] youthful offenders a chance to wipe their records clean . . . ."  *Adams v. United States*, 622 F.3d 608, 611 (6th Cir. 2010).

The other three were Petitioner, his brother Heath and his friend Edward Griffes.  (Trial Tr. V, ECF No. 11-8, PageID.1827-1828; Trial Tr. VII, ECF No. 11-10, PageID.2468; Trial Tr. IX, ECF No. 11-12, PageID.2817.)

According to Hansen, Mudget and Waldorf, the six traveled to Mr. Marrott's house hoping to steal Oxycontin and money.  (Trial Tr. V, ECF No. 11-8, PageID.1819, 1823; Trial Tr. VII, ECF No. 11-10, PageID.2470-2473.)  The females stayed in the car.  (Trial Tr. V, ECF No. 11-8, PageID.1831; Trial Tr. VII, ECF No. 11-10, PageID.2474; Trial Tr. IX, ECF No. 11-12, PageID.2821.)  The four males went inside.  (Trial Tr. V, ECF No. 11-8, PageID.1831; Trial Tr. VII, ECF No. 11-10, PageID.2474; Trial Tr. IX, ECF No. 11-12, PageID.2821.)  They did not expect Mr. Marrott to be there.  (Trial Tr. V, ECF No. 11-8, PageID.1826.)

Michael Hansen testified that he stood watch at the front door while Heath McGowan  questioned Mr. Marrott as to the whereabouts of his Oxycontin.  (Trial Tr. V, ECF No. 11-8, PageID.1832, 1834, 1882.)  Although Michael Hansen's memory of the night was far from crystal clear, it appears that Heath argued with Mr. Marrott, beat him, then covered him with a mattress and left him to die.  (Trial Tr. V, ECF No. 11-8, PageID.1832-1836.)  The four ransacked the house and left with pills,[5] a gun, and a lock box with money inside.  (Trial Tr. V, ECF No. 11-8, PageID.1837, 1844; Trial Tr. VII, ECF No. 11-10, PageID.2476; Trial Tr. IX, ECF No. 11-12, PageID.2822-2823.)

_____

[5]The Oxycontin pills were of value to methamphetamine users to "come down" off the meth high and permit sleep.  (Trial Tr. V, ECF No. 11-8, PageID.1812-1813; Trial Tr. X, ECF No. 11-13, PageID.3101.)

The six then traveled to a camp near the home of McGowans' parents where they split their ill-gotten gains and parted ways.  (Trial Tr. V, ECF No. 11-8, PageID.1846-1851; Trial Tr. VII, ECF No. 11-10, PageID.2480-2484.)

In the weeks and months that followed, the group, with the exception of Heath McGowan, maintained silence about the events of that night.  On several occasions, Heath McGowan told his friends, or fellow prisoners during times he was incarcerated, that he had killed an old man.[6]  In some of his confessions, Heath McGowan added incriminating details that matched the circumstances of Henry Marrott's murder.  The evidence against Petitioner, Heath McGowan and Eddie Griffes consisted principally of the muddled recollections of Hansen, Mudget, and Waldorf, as corroborated by the testimony of Heath McGowan's confessors.

Petitioner offered an alibi in his defense.  He testified that he was at his parents' home when Mr. Marrott was murdered.  (Trial Tr. XI, ECF No. 11-14, PageID.3312-

---

[6]Several witnesses testified that Heath McGowan "confessed" to killing, or at least hurting an old man: fellow prisoner David Thrush (Trial Tr. III, ECF No. 11-6, PageID.1665; Trial Tr. VIII, ECF No. 11-11, PageID.2755); friend of a friend Chad Scott (*Id.*, PageID.1686-1687); fellow prisoner Bradley Sluiter (*Id.*, PageID.1694-1695); brother's girlfriend Heather Wisniewski (*Id.*, PageID.1712-1714; Trial Tr. VI, ECF No. 11-9, PageID.2056); friend Jody Smith (Trial Tr. VI, ECF No. 11-9, PageID.2078, 2081, 2085, 2088-2089); spouse Lori McGowan (*Id.*, PageID.2191-2194); fellow prisoner Calvin Williams (*Id.*, PageID.2229-2230, 2237-2238); Hansen's girlfriend Jessaka Fast (*Id.*, PageID.2249-2256); friend Timothy Hannah (*Id.*, PageID.2277-2280; Trial Tr. VII, ECF No. 11-10, PageID.2405); Timothy Hannah's girlfriend Tiffany Taylor (Trial Tr. VII, ECF No. 11-10, PageID.2455); ex-girlfriend Melissa Mudget (*Id.*, PageID.2485-2486, 2493, 2520-2521); friend Robert Frain (*Id.*, PageID.2566-2567); fellow prisoner Jeffrey Walker (*Id.*, PageID.2582, 2590); friend Able Cherpes (Trial Tr. VIII, ECF No. 11-11, PageID.2705); fellow prisoner Scott Ruff (*Id.*, PageID.2767-2768); fellow prisoner Kyle Chapman (*Id.*, PageID. 2781); acquaintance Wesley Pollock (Trial Tr. IX, ECF No. 11-12, PageID.2872-2873, 2880); and friend Cheyne Avery (*Id.*, PageID.2892-2895).

3316.)  His brother Heath also testified that the events described by Hansen, Mudget, and Waldorf never happened or, at least, that he was not part of the events.  (Trial Tr. X, ECF No. 11-13, PageID.3104-3105, 3115-3116.)  Eddie Griffes claimed he was at home when the crime occurred.  (Trial Tr. XI, ECF No. 11-14, PageID.3572.)  Moreover, Mr. Griffes argued that his participation in the crime was physically impossible because he was recovering from serious injuries at that time.  (*Id.*; PageID.3572, 3610.)

Over ten days of testimony, the jury listened to more than eighty witnesses, but the case really boiled down to the testimony of the six people who were allegedly in the car that night.  The jury apparently found the testimony of Hansen, Mudget, and Waldorf more credible than the testimony of Petitioner, Heath McGowan, and Eddie Griffes.  Although the verdicts varied somewhat from defendant to defendant, the jury found the defendants guilty of murdering Henry Marrott and stealing from him.  (Trial Tr. XIII, ECF No. 11-16, PageID.3905-3913.)

## Discussion

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996, PUB. L. 104-132, 110 STAT. 1214 (AEDPA).  *See Penry v. Johnson*, 532 U.S. 782, 792 (2001). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law.  *Bell v. Cone*, 535 U.S. 685, 693-94 (2002).  The AEDPA has "drastically changed" the nature of habeas review.  *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001).  An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the

merits in state court unless the adjudication:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."   28 U.S.C. § 2254(d).  This standard is "intentionally difficult to meet."  *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation marks omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court.  28 U.S.C. § 2254(d).  This Court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey*, 271 F.3d at 655.  In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Lopez v. Smith*, 135 S. Ct. 1, 3 (2014); *Bailey*, 271 F.3d at 655.  Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court.  *Greene v. Fisher*, 132 S. Ct. 38 (2011).  Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits.  *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 132 S. Ct. at 44).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a

- 8 -

set of materially indistinguishable facts.  *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06).  "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 2015 WL 1400852, at *3 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).  In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims."  *White v. Woodall*, 572 U.S. ___, 134 S. Ct. 1697, 1705 (2014) (quotations marks omitted).

The AEDPA requires heightened respect for state factual findings.  *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998).  A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656.  This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court.  *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

## I.    Prosecutorial misconduct

Petitioner contends that the prosecutor denied him a fair trial by virtue of three instances of improper argument during her closing.[7]  The scope of review in a habeas corpus action of prosecutorial misconduct is narrow.  A petitioner must do more than show erroneous conduct.  "The relevant question is whether the prosecutor's comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"  *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).  The habeas court must consider the extent to which the claimed misconduct tended to mislead the jury or prejudice the petitioner, whether it was isolated or extensive, and whether the claimed misconduct was

---

[7]"If a petitioner does not satisfy the procedural requirements for bringing an error to the state court's attention – whether in trial, appellate, or habeas proceedings, as state law may require – procedural default will bar federal review."  *Magwood v. Patterson*, 561 U.S. 320, 130 S. Ct. 2788, 2801 (2010).  Nevertheless, the U.S. Supreme Court has held that federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits.  *See Hudson v. Jones*, 351 F.3d 212, 216 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) ("Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law."), and *Nobles v. Johnson*, 127 F.3d 409, 423-24 (5th Cir. 1997) (deciding against the petitioner on the merits even though the claim was procedurally defaulted)).  *See also* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").  Where the procedural default issue raises more questions than the case on the merits, the Court may assume, without deciding, that there was no procedural default or that Petitioner could show cause and prejudice for that default.  *See Hudson*, 351 F.3d at 215-16; *Binder v. Stegall*, 198 F.3d 177, 178 (6th Cir. 1999).  Respondent contends that Petitioner's habeas issues I, IV, V, and VI have been procedurally defaulted.  As permitted under *Hudson*, the Court will address these issues on their merits rather than rely on the procedural default bar.

deliberate or accidental. *See United States v. Young*, 470 U.S. 1, 11-12 (1985). In addition, the court may view any misconduct in light of the strength of the competent proofs tending to establish guilt. *See Angel v. Overburg*, 682 F.2d 605, 608 (6th Cir. 1982) (*en banc*).

"The touchstone of due-process analysis is the fairness of the trial, not the culpability of the prosecutor." *Serra v. Michigan Dep't of Corr.*, 4 F.3d 1348, 1355 (6th Cir. 1993) (quoting *Smith v. Phillips*, 455 U.S. 209, 219 (1982)). The Court has emphasized a series of factors to be evaluated in determining whether prosecutorial misconduct so infected the trial as to amount to a violation of due process: (1) whether the comments were isolated or pervasive, (2) whether they were deliberately or accidentally placed before the jury, (3) the degree to which the remarks had a tendency to mislead and prejudice the defendant, (4) whether the prosecutor manipulated or misstated the evidence, (5) the strength of the overall proof establishing guilt, (6) whether the remarks were objected to by counsel and (7) whether a curative instruction was given by the court. *See Darden*, 477 U.S. at 182-83; *United States v. Young*, 470 U.S. 1, 12-13 (1985); *Donnelly*, 416 U.S. at 646-47; *Berger v. United States*, 295 U.S. 78, 84-85 (1935).

Petitioner raised his prosecutorial misconduct claim for the first time in his motion for relief from judgment in the Montcalm County Circuit Court. In rejecting the Petitioner's claim, the court expressly adopted the prosecutor's legal analysis and reasoning in opposition to the motion. (Ord., ECF No. 11-30, PageID.4750.) The

court concluded that the arguments did not warrant relief because the prosecutor's allegedly improper argument had not caused undue prejudice.  (*Id*.)

### A.  Introducing and arguing facts ordered excluded

Petitioner complains that the prosecutor argued in rebuttal as follows:

> During [Defendant Griffes's counsel's] closing he said all the witnesses are meth addicts and that's doubt [sic].  Well, if that's true, then Heath, Clint, and Eddie are in that same category.  He can't separate those three out from all the other witnesses because they're all meth addicts.  They're all using.  So that just doesn't make any sense because he wants you to believe that Heath's memory was perfectly fine even though he was a meth addict.

(Trial Tr. XII, ECF No. 11-15, PageID.3829-3830.)  Petitioner contends that the trial court had excluded all evidence of Petitioner's drug use by virtue of its ruling on the prosecutor's motion for the admission of evidence under Michigan Rule of Evidence 404(b) and, accordingly, the introduction of such evidence and argument relying upon it are improper.

The prosecutor certainly stretched the point that Defendant Griffes's counsel had raised during closing.   Counsel had referred to the witnesses who had provided information to the police, particularly the informer witnesses (Hansen, Mudget, and Waldorf), when he described the witnesses as methamphetamine addicts.  He had not referred to all witnesses.  Nonetheless, there was certainly evidence in the record that Petitioner used methamphetamine.

Petitioner testified with regard to his methamphetamine use.  (Trial Tr. XII, ECF No. 11-14, PageID.3328-3329.)  Based on Petitioner's testimony and the testimony of other witnesses, it was a reasonable inference that Petitioner was a

- 12 -

methamphetamine addict. Moreover, the argument was not offered to support a claim that Petitioner committed the murder of Henry Marrott or even the crime of methamphetamine use, but to demonstrate that Petitioner's memory would be no more reliable than the memory of the other methamphetamine addicts who testified.

Moreover, Petitioner overstates the import of the court's ruling with regard to Rule 404(b) evidence. Michigan Rule of Evidence 404(b) generally precludes the admission of evidence of other crimes, wrongs, or acts to prove the character of a person in order to show action in conformity therewith. The rule recognizes, however, that the evidence may "be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan or system in doing an act, knowledge, identity, or absence of mistake or accident . . . ." MICH. R. EVID. 404(b). In this instance, the acquisition of drugs was the expressly stated motive for the crime.

In response to Petitioner's motion for relief from judgment the prosecutor argued:

> In this case, [Petitioner] and three accomplices broke into a man's house in the middle of the night in order to steal prescription drugs. Without any context regarding [Petitioner's] propensity to use drugs, the delivery of a full and fair picture of the crime itself would have been impaired because the jury would have no context as to why [Petitioner] participated in the crime. Drug use and dependency was an indispensable component to establishing the motive and circumstances surrounding the offense. In addition, the fact that [Petitioner] used methamphetamines and had been awake for approximately a week straight at the time of the offense is necessary to show his drastically affected mental state at the time of the offense.

(Br., ECF No. 11-28, PageID.4724.) In presenting that argument, the prosecutor went beyond the uses of "other acts" evidence permitted under Rule 404(b) and contended

- 13 -

that the drug use of Petitioner (as well as the other five participants and their entire circle of friends) was part of the *res gestae* of the crime.  The court adopted that reasoning when it rejected Petitioner's motion for relief from judgment on the merits. (Ord., ECF No. 11-30, PageID.4750.)

In *United States v. Clay*, 667 F. 3d 689 (6th Cir. 2012), the Sixth Circuit described the *res gestae* exception as follows:

> We have recognized the admissibility of *res gestae*, or background evidence, in limited circumstances when the evidence includes conduct that is "inextricably intertwined" with the charged offense. *United States v. Hardy*, 228 F.3d 745, 748 (6th Cir. 2000).  While this rule is an exception to Rule 404(b), *see id.* at 748, it does not allow a party to evade 404(b) by introducing any and all other act evidence, *see United States v. Buentello*, 423 Fed. Appx. 528, 533 (6th Cir. 2011) (noting that "the concerns that prompted Rule 404(b) are very real, and a party may not rely on [the *res gestae*] exception as a backdoor to circumvent its goals"). The principle contains severe limitations as to "temporal proximity, causal relationship, or spatial connections" among the other acts and the charged offense. *Hardy*, 228 F.3d at 749.  Examples of general categories that may satisfy these requirements include evidence that "is a prelude to the charged offense, is directly probative of the charged offense, arises from the same events as the charged offense, forms an integral part of a witness's testimony, or completes the story of the charged offense." *Id.* at 748.

*Clay*, 667 F.3d at 697-698.  In adopting the prosecutor's reasoning, the Michigan court necessarily determined that Petitioner's drug use (and, indeed, the drug use of his entire circle of friends) was part and parcel of Henry Marrott's murder.[8]  That

---

[8]If the trial court did not rely on the *res gestae* exception, it would be difficult to reconcile the trial court's pretrial ruling that "other acts" evidence of methamphetamine use by Petitioner would not be admissible (not to mention the trial court's sustaining of an objection and offering a curative instruction regarding such evidence (Trial Tr. IV, ECF No. 11-7, PageID.1730)) with the court's eventual admission of such evidence generally and specifically with regard to each member of

determination is eminently reasonable on this record.  It is neither contrary to nor an

unreasonable application of clearly established federal law.  Accordingly, the evidence

of Petitioner's drug use was not improperly admitted and the prosecutor's argument

regarding that use and its effects does not constitute misconduct.[9]

### B.   Arguing facts not in evidence

Petitioner next complains that the prosecutor argued:

> So all three of them, the other three, Eddie, Clint and Mike, saw Heath
> beating Henry.  They all had to have seen him beating Henry and did
> nothing to stop him, just watched him beat this little man senseless.

*   *   *

---

the group, including Petitioner.  It is noteworthy, however, that Petitioner's counsel did
not object to the admission of evidence regarding Petitioner's methamphetamine use
other than when Heather Wisniewski testified.  Accordingly, the evidence was clearly
before the jury and it was not improper for the prosecutor to comment on that evidence.

[9]Petitioner does not and cannot argue that the admission of other acts evidence
independent of his alleged claim of prosecutorial misconduct warrants habeas relief.
There is no clearly established Supreme Court precedent that holds that a state court
violates the Due Process Clause by permitting propensity evidence in the form of other
bad acts evidence.  In *Estelle v. McGuire*, the Supreme Court declined to hold that the
admission of prior acts evidence violated due process.  *Estelle*, 502 U.S. at 75.  The
Court stated in a footnote that, because it need not reach the issue, it expressed no
opinion as to whether a state law would violate due process if it permitted the use of
prior crimes evidence to show propensity to commit a charged crime.  *Id.* at 75 n.5.
While the Supreme Court has addressed whether prior acts testimony is permissible
under the Federal Rules of Evidence, *see Old Chief v. United States*, 519 U.S. 172
(1997); *Huddleston v. United States*, 485 U.S. 681 (1988), it has not explicitly addressed
the issue in constitutional terms.  The Sixth Circuit has found that "[t]here is no
clearly established Supreme Court precedent which holds that a state violates due
process by permitting propensity evidence in the form of other bad acts evidence."
*Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003).

They all entered the home and confronted Henry and Henry Marrott ended up dead as a result of their actions.

\* \* \*

They did intend to kill him by their actions during the killing or their lack of action from stopping Heath and you can infer premeditation by their actions, what they said, what they did, how they did it.

\* \* \*

The testimony of Mike, Melissa and Tara put Clint and Eddie  right there along side Heath. They aided or encouraged Heath and they're as guilty as Heath, who struck the fatal blows. . . .

(Trial Tr. XII, ECF No. 11-15, PageID.3661-3662, 3698-3700.)  Petitioner claims there

is no record evidence to support the prosecutor's argument.

Respondent argues there was record evidence to support the prosecutor's

argument:

[T]he record provides sufficient evidence that the assertions made by the Prosecutor in closing were proper.  Melissa Mudget testified that, just after Defendant and his cohorts reentered the car after robbing and killing Henry, Defendant stated "that his brother beat that guy up and messed him up pretty bad." Trial Vol. 7, 198:4-5.  Defendant elaborated, saying that "[h]e thought [Henry] was going to die." *Id.* at 198:14. Tara Waldorf testified that, upon returning to the vehicle that night, Defendant was upset, arguing with Heath and punching the back of his seat.  Trial Vol. 9, 12:6-22.  Mudget testified that the men "were kind of going a little nuts" after they came back to the car.  Trial Vol. 7, 180:9-10.

Defendant would not have been able to make a statement of belief as to whether or not Henry was going to die unless he had witnessed the beating or its immediate aftermath.  Likewise, Defendant's anger at Heath's slaying of Henry belies any claim that he was not in the room at the time of the killing.  Although there was little if any direct evidence that could have been offered about who exactly was in the room at the time of the killing, all circumstantial evidence indicates that Defendant

- 16 -

was in the room at the time of the killing.  As such, this inference was a proper one taken from the facts presented to the jury.  There was no error in the argument, and it is not a ground for any kind of relief.

(Answer, ECF No. 10, PageID.249-250.)  Respondent takes this argument directly from the prosecutor's brief in opposition to Petitioner's motion for relief from judgment (ECF No. 11-28); thus, this is the reasoning the trial court adopted in denying Petitioner relief from judgment.   (Ord., ECF No. 11-30, PageID.4750.)

Moreover, there is additional record evidence that supports the inference that Petitioner was in the room when Mr. Marrott was beaten.   Michael Henson testified that he saw Heath McGowan strike Mr. Marrott, Mr. Marrott went to the ground, and then "everybody" tried to leave because it was not supposed to happen that way.  (Trial Tr. V, ECF No. 11-8, PageID.1836.)  If Heath McGowan struck Mr. Marrott such that Mr. Marrott fell to the ground, and then "everybody" tried to leave, it is reasonable to infer that "everybody," including Petitioner, tried to leave because they saw it happen.


Prosecutors "must be given leeway to argue reasonable inferences from the evidence." *Byrd v. Collins*, 209 F.3d 486, 535 (6th Cir. 2000) (quoting *United States v. Collins*, 78 F.3d 1021, 1040 (6th Cir. 1996)).  The prosecutor did nothing more than that in this instance.  Certainly, the state courts' resolution of Petitioner's claim is neither contrary to nor an unreasonable application of clearly established federal law and is based on a reasonable determination of the facts on the record before the court.

C.    <u>Shifting the burden of proof</u>

Petitioner's last claim of prosecutorial misconduct is premised on the prosecutor's argument inviting the jury to reject the credibility of Petitioner's alibi testimony.  Petitioner asks the Court to focus on these two sentences:

> You look at Clint's statement and how it can't be true and you look at all these other witnesses who–who don't support this so-called alibi.  That's how you decide who did it.

(Trial Tr. XII, ECF No. 11-15, PageID.3827.)  According to Petitioner, the argument misled the jury to believe that the burden of proof was on Petitioner.

"[T]he presumption of innocence, although not articulated in the Constitution, is a basic component of a fair trial under our system of criminal justice." *Estelle v. Williams*, 425 U.S. 501, 503, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976).  The state carries the burden of proving each and every element of a criminal offense beyond a reasonable doubt, and any conduct that shifts that burden to a defendant constitutes a violation of due process.  *See Carella v. California*, 491 U.S. 263, 265, 109 S.Ct. 2419, 105 L.Ed.2d 218 (1989); *Sandstrom v. Montana*, 442 U.S. 510, 521, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979).

Here, the "objectionable" sentences are part of a larger argument regarding which version of events is more credible: the events as described by Hansen, Mudget, and Waldorf, as corroborated by consistent testimony from more than a dozen other witnesses, or the events as described by Petitioner which appeared to be unsupported by his own witness, Laurie Schoonmaker, because it could not be logically reconciled

with the testimony of Petitioner's former girlfriend Heather Wisniewski. In its entirety, the argument reads as follows:

> Clint's alibi, you know both Schoonmaker and Heather Wisniewski show that he can't be telling the truth because if Schoonmaker were there and Heather wasn't there, then Clint's not there. I mean, that's basically what came out from those three witnesses. Defense Counsel asks you, how do you decide who did it? Well, you start with the co-defendants who were there. You get others who corroborate the co-defendants. You add their testimony into the mix. You look at Clint's statement and how it can't be true and you look at all these other witnesses who—who don't support this so-called alibi. That's how you decide who did it. You've got to look at each piece as it relates to the case and I think if you do that, start with the co-defendants, throw in the other witnesses and then throw in Clint's statement, you'll see it doesn't make any sense.

(*Id.*)

"[T]he prosecutor is permitted to comment on the improbability of the defendant's theory once a defendant makes an issue legally relevant by advancing that theory . . . ." *Traylor v. Price*, 239 F. App'x 235, 242 (6th Cir. 2007); *see also Cristini v. McKee*, 526 F.3d 888, 901-902 (6th Cir. 2008) (court concluded that prosecutor was permitted to call into question alibi based on record evidence). In isolation, the two sentences seem to go beyond simple comment on the improbability of Petitioner's alibi and, instead, invite the jury to conclude Petitioner committed the crime because the testimony in support of his alibi suffered from logical inconsistencies. Viewed in context, however, the prosecutor's argument served the entirely permissible purpose of inviting the jury to rely on the corroborated testimony of Hansen, Mudget and Waldorf and reject the uncorroborated testimony of Petitioner. Thus, the prosecutor's argument was not improper.

- 19 -

Moreover, even if the argument were improper, or even if the jurors disregarded the context of the "objectionable" sentences, the trial court disabused the jury of any improper concept of the burden of proof when, mere moments later, it instructed the jury:

> A person accused of a crime is presumed to be innocent.  This means you must start with the presumption that the defendant is innocent.  This presumption continues throughout the trial and entitles the defendant to a verdict of not guilty unless you are satisfied beyond a reasonable doubt that he is guilty.

> Every crime is made up of parts called elements.  The Prosecutor must prove each of these elements of a crime beyond a reasonable doubt.  The defendant is not required to prove his innocence or do anything. If you find the Prosecutor has not proven every element beyond a reasonable doubt then you must find the defendant not guilty.

(*Id.*, PageID.3833-3834.)  The trial court also instructed the jury that "[t]he lawyers' statements and arguments are not evidence."  (*Id.*, PageID.3835.)

Under these circumstances, where the allegedly objectionable comments were isolated, where the comments considered in context are not misleading, where the comments are not based on a manipulation or misstatement of the evidence, where the comments prompted no objection, and where the trial court provided an instruction that would cure any misconception as to the burden of proof shortly after the comments were made, *Darden*, 477 U.S. at 182-83, the Michigan courts' rejection of Petitioner's claim of prosecutorial misconduct is not contrary to, nor an unreasonable application of, clearly established federal law.  Moreover, the rejection of the argument is based on a reasonable determination of the facts on the record before the court.  In short, Petitioner has failed to establish his entitlement to habeas relief.

- 20 -

II.    <u>Refusal to appoint a defense expert</u>

Petitioner complains that he was denied due process when the trial court refused to fund an expert witness for the defense.   The Michigan Court of Appeals rejected that claim:

> On appeal, defendants all contend the trial court erred in denying them expert witness fees to permit them to retain an expert witness to testify regarding the effects of methamphetamine use on memory, effectively denying them a defense.
>
> *    *    *
>
> The trial court conducted a hearing on a series of pretrial motions, including a written motion by counsel for defendant Griffes seeking expert witness fees.  Defendant sought $1200 to retain Ben Kuslikis, Ph.D. as an expert witness in pharmacology and toxicology.  Counsel asserted testimony from such an expert was necessary to aid the jury in understanding "why these witnesses are making these false statements" and, impliedly, to challenge their credibility based on memory problems evidenced by habitual methamphetamine users.
>
> *    *    *
>
> The prosecutor contested the necessity of defendants securing an expert witness, since all of the purported witnesses readily acknowledged difficulties with their memories and that cross-examination would be sufficient to demonstrate these problems and was the proper method to challenge their credibility.  The prosecution expressed concern for the jury's potential misuse of the expert's testimony in determining the credibility of these witnesses.
>
> In ruling, the trial court discussed the requirements of MICH. COMP. LAWS § 775.15 and MICH. R. EVID.   702 and case law interpreting those provisions. The trial court rejected defendants' request for expert witness fees finding that the reasons "defendants want them here for is to have Dr. Kuslikis to testify about the credibility of witnesses and that's not understanding the evidence to determine the facts at issue."
>
> *    *    *

- 21 -

Authorization for the payment of expert witness fees for an accused is statutorily based. MCL 775.15. The statute leaves the decision to approve the payment of expert witness fees for a defendant to the discretion of the court when the accused can demonstrate "that there is a material witness in his favor within the jurisdiction of the court, without whose testimony he cannot safely proceed to trial . . . ." *Id.* A defendant must show a nexus between the facts of the case and the need for the expert, and there must be an indication that the expert testimony would likely be of benefit to the defense. *Id.*; *see, also, People v Jacobsen*, 448 Mich 639, 641; 532 N.W.2d 838 (1995).

Contrary to defendants' assertions, the trial court properly declined to award expert witness fees. Defendants' proposed expert was to be used to call into question the testimony of witnesses who were admitted methamphetamine addicts based on problems evidenced with memory and cognitive functioning. Given that every witness identified as a methamphetamine user openly acknowledged that they experienced problems with their memory and recall of events, an expert was unnecessary. Each witness, on direct examination by the prosecutor, repeatedly acknowledged their inability to clearly recall events or place events into a time perspective and complained of difficulties with their memories. The lack of reliability regarding their recall was further explored and emphasized on cross-examination. Even testimony by the lead investigating officer, Wolter, acknowledged that methamphetamine addicts demonstrated poor memories and difficulty with the recall and temporal sequencing of events. At best, an expert's testimony would have been merely duplicative and the absence of an appointed expert did not serve to deprive defendants of an opportunity to put forth their defense.

*People v. McGowan*, Nos. 274829, 275197, 276385, 2009 WL 4827442 at *2-4 (Mich. Ct. App. Dec. 15, 2009).

The Supreme Court has recognized the general principle that the government must provide indigent defendants with the "basic tools of an adequate defense or appeal, when those tools are available for a price to other prisoners." *Britt v. North Carolina*, 404 U.S. 226, 227 (1971); *see Douglas v. California*, 372 U.S. 353, 357–58 (1963); *Griffin v. Illinois*, 351 U.S. 12, 18–19 (1956) (plurality opinion). Although the

- 22 -

government need not purchase for the indigent defendant all the assistance that a wealthier defendant might buy, fundamental fairness requires that indigent defendants have "an adequate opportunity to present their claims fairly within the adversary system." *Ross v. Moffitt*, 417 U.S. 600, 612 (1974).  In *Ake v. Oklahoma*, 470 U.S. 68 (1985), the Supreme Court held that as part of the basic tools of an adequate defense, an indigent defendant has a due process right to the appointment of a psychiatrist to assist him in his defense when he "demonstrates to the trial judge that his sanity at the time of the offense is to be a significant factor at trial."  *Id.* at 83. Shortly after deciding *Ake*, the Supreme Court declined to extend *Ake's* holding to the appointment of a criminal investigator, fingerprint expert, and ballistics expert and declined to address the question of "what if any showing would [entitle] a defendant to [private non-psychiatric] assistance" as a matter of federal constitutional law. *Caldwell v. Mississippi*, 472 U.S. 320, 323 n.1 (1985)."[10]

In habeas corpus cases decided before the enactment of the AEDPA, federal circuit courts, including the Sixth Circuit, extended *Ake* to non-psychiatric experts. For

_____

[10]*See also Hawkins v. Mullins*, 291 F.3d 658, 671 (10th Cir. 2002) (construing *Caldwell* as declining to extend the *Ake* holding); *Weeks v. Angelone*, 176 F.3d 249, 264–65 (4th Cir. 1999) (same); *Harris v. Stovall*, 212 F.3d 940, 945 (6th Cir. 2000) (contrasting *Ake* and *Caldwell*, the court stated "[T]he Supreme Court has not completely answered the question of what basic tools are necessary for an adequate defense."); *Thacker v. Rees*, No. 86-5973, 1988 WL 19179 at *7 n.6 (6th Cir. Mar. 8, 1988) ("*Ake* restricted its holding to psychiatric expert assistance. *Ake*, 470 U.S. at 83. In a subsequent case, the Court skirted the issue of 'whether and when an indigent defendant is entitled to non-psychiatric expert assistance.' *Johnson v. Oklahoma*, 108 S. Ct. 35, 37 (1987) (Marshall, J., dissenting from denial of certiorari); *see Caldwell v. Mississippi*, 105 S. Ct. 2633, 2637 n.1 (1985).").

- 23 -

example, in *Terry v. Rees*, 985 F.2d 283, 284 (6th Cir.1993), the Sixth Circuit held that the petitioner was deprived of the opportunity to present an effective defense when he was denied an independent pathologist in order to challenge the government's position as to the victim's cause of death.  With the enactment of the AEPDA in 1996, the petition for writ of habeas corpus may be granted only if the decision of the state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States."  Some federal circuit courts have acknowledged that the Supreme Court has not explicitly extended *Ake* to non-psychiatric experts.  *See, e.g., Conklin v. Schofield*, 366 F.3d 1191, 1206 (11th Cir. 2004) ("[T]he Supreme Court has not yet extended *Ake* to non-psychiatric experts."), *cert. denied*, 544 U.S. 952 (2005); *Hawkins*, 291 F.3d at 671 (The Supreme Court has not "specifically" extended *Ake* to investigators and other experts); *Weeks*, 176 F.3d at 264-265 (habeas petitioner's entitlement to expert assistance at trial in the fields of pathology and ballistics would require the announcement of a new rule, in violation of *Teague's* anti-retroactivity principle, because at the time that petitioner's conviction became final, Supreme Court precedent required only that an indigent defendant be appointed psychiatric experts when his sanity was at issue); *Jackson v. Ylst*, 921 F.2d 882, 886 (9th Cir. 1990) (habeas petitioner's claim that his due process rights violated when he denied the appointment of an expert on eyewitness identification proposed a new rule in violation of *Teague*,

and therefore could not serve as a basis for federal habeas relief).[11]   Therefore, it is

an open question whether the holding in *Ake* applies to requests for non-psychiatric

experts.  Because the Supreme Court has not explicitly extended *Ake* to require the

appointment of non-psychiatric experts, Petitioner cannot show that the failure to

provide funds for an expert regarding the effect of methamphetamine on the memory

was contrary to, or an unreasonable application of, clearly established Supreme Court

precedent.

Even if *Ake* were clearly established federal law as applied to non-psychiatric

witnesses, Petitioner would not be entitled to relief.  Those circuits that have applied

*Ake* to non-psychiatric experts in non-capital cases (before or after the AEDPA) have

determined the constitutionality of declining to provide the expert according to the

following test:

_____

[11]Other federal courts of appeal have extended *Ake* to non-psychiatric experts in non-capital cases.  *Williams v. Norris*, 612 F.3d 941, 948 n.3 (8th Cir. 2010); *United States v. Snarr*, 704 F.3d 368, 404-405 (5th Cir. 2013).  And, the Sixth Circuit has upheld the denial of habeas relief to a petitioner who claimed that *Ake* required the state to provide a non-psychiatric expert in a capital case, not because *Ake's* extension to non-psychiatric experts was not clearly established federal law, but because the Ohio court's discretionary denial of the non-psychiatric expert was not an objectively unreasonable application of *Ake*.  *Mason v. Mitchell*, 320 F.3d 604, 615 (6th Cir. 2003).  Changing even one aspect of the *Ake* formula (psychiatric expert/capital case/sanity at issue) seems to throw the entire analysis into chaos as evidenced by the confusing cacophany of concurring and dissenting opinions in the *en banc* decision in *Kordenbrock v. Scroggy*, 919 F.2d 1091 (6th Cir. 1990) where the expert was a psychiatrist, it was a capital case, but the petitioner's sanity was not in issue.  The Sixth Circuit recognizes that it has failed to provide a clear answer.   *Babick v. Berghuis*, 620 F.3d 571, 579 (6th Cir. 2010) ("The circuit courts have not reached consensus on the question. . . . . Our own precedent is unclear.") (citations omitted).

> *Ake* and *Caldwell* taken together hold that a defendant must show more than a mere possibility of assistance from an expert. Rather, the defendant must show a reasonable probability that an expert would aid in his defense, and that denial of expert assistance would result in an unfair trial.

*Little v. Armontrout*, 835 F.2d 1240, 1244 (8th Cir. 1987) (citing *Moore v. Kemp*, 809 F.2d 702, 712 (11th Cir.) (*en banc*), *cert. denied*, 481 U.S. 1054 (1987)).[12]   That is essentially the test employed by the trial court when it denied Petitioner's request. (Pretrial Tr., ECF No. 11-3, PageID.409) ("[T]he court must produce funds for indigent defendants if there is an expert in the case, if number one, shows a need for an expert for purposes of having a fair trial; two, the defendant must show a nexus between the facts of the case and the need for the expert; and three, they must show the expert's testimony would likely benefit the defense.") Both the trial court and the Michigan Court of Appeals concluded that Petitioner failed that test.

Petitioner sought funding to offer the opinion testimony of Ben Kuslikis, PhD, an expert in pharmacology and toxicology, with regard to the effect of methamphetamine usage on memory.  Petitioner argues that the testimony was necessary because the prosecutor offered its own expert regarding the effects of

---

[12]The Sixth Circuit applied such a test in *Thacker*, 1988 WL 19179, and accepted the state court's application of that test in *Mason*, 320 F.3d at 615 and *Woodley v. Bradshaw*, 451 F. App'x 529, 535 (6th Cir. 2011).  Petitioner asks the Court to evaluate the issue under the standard of *Forensic v. Birkett*, 501 F.3d 469 (6th Cir. 2007). *Forensic* was not a case about funding an expert witness; it was about the exclusion of expert witness testimony. *Id.* at 474-476. The *Forensic* court recognized that exclusion of expert testimony was a distinct issue that required a different analysis. *Id.* at 484 ("[T]he failure to retain an expert as an initial matter presents a somewhat different problem than the exclusion of an already retained expert . . . .") *Forensic* offers no guidance to resolution of the *Ake* issue in this case.

- 26 -

methamphetamine usage: Michigan State Police Detective Sally Wolters.  Petitioner mischaracterizes the record.  Detective Wolters did not offer expert testimony regarding the effects of methamphetamine on memory.  The court did not qualify her as an expert authorized to offer opinion testimony.  Indeed, there was no need for expert testimony on the issue. The meth addict witnesses acknowledged significant memory problems because of their drug use.  The prosecutor freely acknowledged the issue and the counsels of Petitioner and his co-defendants explored the memory problems of these witnesses at length through cross-examination.  Based on counsel's description of the proposed testimony of Dr. Kuslikis, his testimony would have been wholly duplicative of existing testimony on an issue that was simply undisputed.

It is against that backdrop that the state courts concluded that expert testimony on this issue was not necessary to provide Petitioner a fair trial.  That determination is neither contrary to, nor an unreasonable application of, the clearly established federal law of *Ake* (if,  indeed, it is clearly established with regard to non-psychiatric witnesses).  Moreover, the factual determinations upon which the determination is based are reasonable and amply supported in the record.

### III.    Exclusion of Petitioner's alibi witnesses

Petitioner contended that he spent the weekend Henry Marrott was murdered at his parents' home.  He planned to offer the testimony of his parents, Frank and Teresa McGowan, and his uncle, Henry Alexander, to support his alibi.

The trial court refused to permit Henry Alexander to testify because Petitioner identified Alexander as an alibi witness late, on the eighth day of trial.  The trial court

noted that Petitioner knew of the existence and location of Mr. Alexander weeks before Petitioner identified Alexander as an alibi witness.

The trial court refused to permit Petitioner's parents to testify because they blatantly violated the court's sequestration order.  The prosecutor offered taped conversations between Petitioner's parents and Heath McGowan and Petitioner's parents and Petitioner wherein the participants discussed in detail trial testimony and other evidence.  Moreover, the conversations indicated that Petitioner's parents, despite prior warnings from the court, were contacting other witnesses.

Petitioner argues that the exclusion of the witnesses denied him the right to present a defense.  The Michigan Court of Appeals rejected that argument.  With respect to Henry Alexander, the court stated:

> Defendant did not indicate an intent to call Alexander as an alibi witness until the eighth day of trial, 36 days after the trial initiated.  Although defendant asserted Alexander could not be located, this assertion was questioned when the prosecutor noted that Alexander was initially included on Heath McGowan's witness list and submitted a taped conversation between McGowan's parents and Heath indicating Alexander was watching Heath's children.  Having reviewed this tape, the trial court determined that the McGowans were aware of the existence and location of this witness no later than October 6, 2006. However, defendant did not attempt to identify him as a witness until several weeks later.  Because the late notice of the intent to call this individual as a witness precluded the prosecutor's opportunity to interview the witness or to determine whether any form of collusion had occurred between the witness and McGowan's parents, the trial court determined it would be prejudicial to the prosecutor to permit his testimony and denied defendant's request.
>
> Pursuant to MICH. COMP. LAWS § 768.20(1), a defendant must file and serve a notice of alibi, listing names of witnesses, at least ten days before trial.  There is a continuing duty to disclose additional names, as they become known. MICH. COMP. LAWS § 768.20(3).  A failure to file and serve

the written notice in accordance with the statutory time limits will result in exclusion of the alibi evidence. MICH. COMP. LAWS § 768.21(1). Under the circumstances of this case, the statutory notice to add Alexander as an alibi witness was not given and trial had substantially progressed. Defendant failed to show that he could not have provided this name in a timely manner in order to satisfy MICH. COMP. LAWS § 768.20(3).  As such, the trial court did not abuse its discretion when it barred this witness from testifying. *People v. McMillan*, 213 Mich.App. 134, 140, 539 N.W.2d 553 (1995).

*McGowan*, 2009 WL 4827442 at *23.  The court reached the same conclusion with respect to Frank and Teresa McGowan, but for different reasons:

Defendant also argues that the decision to exclude the testimony of his parents as alibi witnesses violated his constitutional right to present a defense.  Defendant's parents were prohibited from testifying based on their violation of a sequestration order, which precluded communication between witnesses and defendants regarding testimony and evidence being provided during trial.  The prosecutor provided evidence that both Heath and Clint McGowan discussed in detail trial testimony and evidence with their parents, Frank and Theresa McGowan.  Notably, the prosecutor demonstrated that the McGowan parents were contacting other witnesses in violation of the court's order.

The purpose underlying the sequestration of witnesses is to prevent them from adapting their testimony to conform to the testimony of others and to aid in detecting testimony that is less than candid or truthful. *People v. Meconi*, 277 Mich.App. 651, 654, 746 N.W.2d 881 (2008).  To remedy the violation of a sequestration order, a trial court may: "(1) hold[ ] the offending witness in contempt; (2) permit[ ] cross-examination concerning the violation; and (3) preclude the witness from testifying." *Id.* Exclusion of a witness' testimony is considered to be "an extreme remedy that should be sparingly used." *Id.*  In this instance, violation of the sequestration order was both ongoing and blatant, suggesting the purposeful interference in the testimony of witnesses and possible intimidation.  Because the violations by the McGowans were not inadvertent, but were continuing and clearly intended to influence testimony of witnesses, the trial court's decision to preclude their testimony did not comprise an abuse of discretion.  *Id.* at 654-655, 746 N.W.2d 881.

> While defendant was prohibited from presenting the testimony at issue, he was not precluded from offering a defense. He personally testified to his alibi and presented other witnesses to corroborate his assertion that he was not present or involved in the crime.   Consequently, it was defendant's actions through the untimely identification of Alexander and involvement in the violation of the sequestration order that limited any presentation of his alibi defense.

*McGowan*, 2009 WL 4827442 at *23-24.

The Supreme Court has determined that a criminal defendant has the right to a "meaningful opportunity to present a complete defense." *California v. Trombetta*, 467 U.S. 479, 485 (1984), *quoted in Holmes v. S. Carolina*, 547 U.S. 319, 324 (2006). The right is derived from the Sixth Amendment rights to compel and confront witnesses and from the Due Process Clause of the Fourteenth Amendment.  *See Holmes*, 547 U.S. at 324; *Crane v. Kentucky*, 476 U.S. 683, 690 (1986); *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973); *Washington v. Texas*, 388 U.S. 14, 19 (1967) ("Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense.  This right is a fundamental element of due process law.").

The Supreme Court, however,  repeatedly has recognized that the right to present a defense is subject to reasonable restrictions.  *See United States v. Scheffer*, 523 U.S. 303, 308 (1998); *Taylor v. Illinois*, 484 U.S. 400, 410 (1988) (the Sixth Amendment does not confer on the accused an "unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence"); *Rock v. Arkansas*, 483 U.S. 44, 55 (1987); *Chambers*, 410 U.S. at 295; *see*

- 30 -

*also Wong v. Money*, 142 F.3d 313, 325 (6th Cir. 1998).  The Supreme Court has further

explained:

> "[S]tate and federal rulemakers have broad latitude under the
> Constitution to establish rules excluding evidence from criminal trials.
> Such rules do not abridge an accused's right to present a defense so long
> as they are not "arbitrary" or "disproportionate to the purposes they are
> designed to serve.  Moreover, we have found the exclusion of evidence to
> be unconstitutionally arbitrary or disproportionate only where it has
> infringed upon a weighty interest of the accused.

*Scheffer*, 523 U.S. at 308 (internal citations omitted).

A.     Exclusion of a witness identified late

Despite Petitioner's protests, the restrictions imposed upon Petitioner do not

appear to be arbitrary or disproportionate.  In *Taylor v. Illinois*, 484 U.S. 400 (1988),

the Court explained the validity of a rule requiring the timely identification of

witnesses and the propriety of exclusion as a remedy for violation of that rule:

> The principle that undergirds the defendant's right to present
> exculpatory evidence is also the source of essential limitations on the
> right.   The adversary process could not function effectively without
> adherence to rules of procedure that govern the orderly presentation of
> facts and arguments to provide each party with a fair opportunity to
> assemble and submit evidence to contradict or explain the opponent's
> case.

*     *     *

> Discovery, like cross-examination, minimizes the risk that a judgment
> will be predicated on incomplete, misleading, or even deliberately
> fabricated testimony.  The "State's interest in protecting itself against an
> eleventh-hour defense" is merely one component of the broader public
> interest in a full and truthful disclosure of critical facts.

*     *     *

- 31 -

Petitioner does not question the legitimacy of a rule requiring pretrial disclosure of defense witnesses, but he argues that the sanction of preclusion of the testimony of a previously undisclosed witness is so drastic that it should never be imposed. He argues, correctly, that a less drastic sanction is always available . . . .

It may well be true that alternative sanctions are adequate and appropriate in most cases, but it is equally clear that they would be less effective than the preclusion sanction and that there are instances in which they would perpetuate rather than limit the prejudice to the State and the harm to the adversary process. One of the purposes of the discovery rule itself is to minimize the risk that fabricated testimony will be believed . . . .

We presume that evidence that is not discovered until after the trial is over would not have affected the outcome. It is equally reasonable to presume that there is something suspect about a defense witness who is not identified until after the 11th hour has passed. If a pattern of discovery violations is explicable only on the assumption that the violations were designed to conceal a plan to present fabricated testimony, it would be entirely appropriate to exclude the tainted evidence regardless of whether other sanctions would also be merited.

\*    \*    \*

A trial judge may certainly insist on an explanation for a party's failure to comply with a request to identify his or her witnesses in advance of trial. If that explanation reveals that the omission was willful and motivated by a desire to obtain a tactical advantage that would minimize the effectiveness of cross-examination and the ability to adduce rebuttal evidence, it would be entirely consistent with the purposes of the Compulsory Process Clause simply to exclude the witness testimony.

*Taylor*, 484 U.S. at 410-415. In this instance, the trial judge followed the path laid out by the Supreme Court in *Taylor*. (Trial Tr. X, ECF No. 11-13, PageID.130-152.) When Petitioner offered an eleventh hour "new" witness, the judge sought an explanation for why Petitioner failed to comply with the requirement to identify his witnesses before trial. That explanation supported the inference that the timing of the identification

was tactical.  Petitioner and his parents clearly knew of the identity and location of this witness long before he was disclosed.  The judge decided to exclude witness Alexander's testimony noting that he had provided the same remedy when he excluded a late-named prosecution witness: Kevin VanderLip.  (*Id.*, PageID.151-152.)  The trial court's decision, and affirmance by the Michigan Court of Appeals, is neither contrary to nor an unreasonable application of *Taylor* and the factual determinations upon which it rests are not unreasonable on this record.

Petitioner does not base his argument on the clearly established federal law of *Taylor*.  He relies instead on *Forensic*, 501 F.3d at 469.  In *Forensic*, the defendant timely identified his expert but failed to provide the expert's report two months before trial, as ordered, providing it instead eleven days before trial.  *Id.* at 471.  The prosecutor did not claim prejudice arising from the delay; indeed, the prosecutor did not indicate any intention to present its own expert.  *Id.* at 477.  Nonetheless, the trial court excluded the expert's testimony.  The Sixth Circuit affirmed the district court's grant of habeas relief concluding that, under those circumstances, a less severe sanction was appropriate.  *Id.* at 478.

Petitioner's reliance on *Forensic* is misplaced.  The *Forensic* court acknowledged that the factual circumstances presented were different than those presented in *Taylor* where the defendant had failed to disclose the identity of witnesses before the trial. *Id.* at 477 ("This latter fact distinguishes the present case from *Taylor*, where the Supreme Court upheld the exclusion of two defense witnesses whose very identity the defendant had failed to disclose in complete disregard of the prosecution's pretrial

- 33 -

discovery request.").  Moreover, the *Ferensic* court recognized that purposeful failure to name a witness warranted exclusion of the witness' testimony.  *Id.* at 476 ("[T]he Supreme Court has given special consideration to the nature of the exclusion-triggering discovery violation at issue, noting that only egregious violations involving, for example 'willful misconduct' on the part of the defendant or his counsel will justify the exclusion of material evidence.").  The decision in *Ferensic* does not alter the conclusion that the trial court's exclusion of alibi witness Alexander is neither contrary to nor an unreasonable application of *Taylor*.

### B.    Exclusion for violation of the sequestration order

Exclusion of the testimony of the McGowan parents for their willful violation of the sequestration order is also neither arbitrary nor disproportionate.  As a matter of federal procedural law, in *Holder v. United States,* 150 U.S. 91, 92 (1893), the Supreme Court noted that a witness' violation of a sequestration order did not automatically disqualify the witness from testifying, but under "particular circumstances" could support exclusion.  In applying *Holder*, the Sixth Circuit has noted that "particular circumstances" sufficient to justify exclusion exist when a witness has violated the sequestration order "with the 'consent, connivance, procurement or knowledge' of the party seeking [the witness'] testimony.  *United States v. Gibson*, 675 F.2d 825, 836 (1982) (quoting *United States v. Killiyan*, 456 F.2d 555, 560 (8th Cir. 1972)).

As a matter of constitutional law, generally, the Sixth Circuit has concluded that exclusion of a witness' testimony because that witness violated a sequestration order would not deprive a criminal defendant of his constitutional rights.  *See Robinson v.*

*Tennessee*, 474 F.2d 1273 (6th Cir.) (1973); *Smith v. Tate*, Nos. 92-3463, 92-4023, 1993 WL 339724 (6th Cir. Sep. 3, 1993); *see also Akrawi v. Jabe*, 979 F.2d 418, 422 (6th Cir. 1992) (exclusion of witness appropriate where the witness knowingly violated the sequestration order with the consent or knowledge of petitioner).  Viewing the matter through the lens of *Taylor* yields the same result.  In *Michigan v. Lucas*, 500 U.S. 145 (1991) the Supreme Court explained that *Taylor* stands for the proposition that a defendant's "'willful misconduct' . . . designed to obtain 'a tactical advantage[,]'" *Lucas*, 500 U.S. at 152,  renders appropriate the severest sanction of exclusion regardless of whether prejudice to the prosecution could have been avoided' by a lesser penalty.'" *Id.*

Here, the trial court concluded that the McGowan parents' testimony was tainted by conversations with Clint and Heath where they learned what took place at trial such that they could adjust their testimony accordingly. (Trial Tr. X, ECF No. 11-13, PageID.160.)  The Michigan Court of Appeals affirmed that determination. *McGowan*, 2009 WL 4827442 at *24.  Petitioner fails to demonstrate that the state courts' resolution of the issue is contrary to or an unreasonable application of clearly established federal law.  The factual determinations upon which the state courts based their determinations are reasonable on this record.

IV.    Separate trials/separate juries

Petitioner claims he was denied due process and a fair trial by the court's failure to afford him a trial separate from his co-defendants or, alternatively, a separate jury.[13] Petitioner raised the issue for the first time in his motion for relief from judgment.[14] The trial court denied the motion, adopting the reasoning provided in the prosecutor's opposition to the motion.  (Ord., ECF No. 11-30, PageID.4750.)  Accordingly, the trial court concluded that Petitioner had failed to demonstrate any undue prejudice from the joinder because the co-defendants' defenses were not antagonistic and the co-defendants were equally culpable in light of the charge of felony murder.  (Br., ECF No. 11-28, PageID.4730.)  Moreover, the court reasoned, Petitioner's suggestion that the joinder resulted in the admission of "other acts" evidence that would not be admissible in separate trials fails.  (*Id.*, PageID.4731.)    The "other acts" evidence was

---

[13]Petitioner also suggests that the state courts failed to follow state law regarding severance.  It is well-settled that a purported violation of state law does not provide a basis for federal habeas relief.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).  "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  *Id.*  Moreover, the state courts here determined that severance was inappropriate as a matter of state law.  It is not the province of a federal habeas court to re-examine state-law determinations on state-law questions.  *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle*, 502 U.S. at 68.  The decision of the state courts on a state-law issue is binding on a federal court.  *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983); *see also Stumpf v. Robinson*, 722 F.3d 739, 746 n.6 (6th Cir. 2013) (quoting *Bradshaw*, 546 U.S. at 76).

[14]Although Petitioner raised the issue directly for the first time in his motion for relief from judgment, his co-defendant Eddie Griffes raised it on direct appeal and Petitioner raised it indirectly through a motion for new trial on remand from the court of appeals.  *McGowan*, 2009 WL 4827442 at *19.  Thus, the Michigan Court of Appeals fully considered the issue on the merits and affirmed the trial court.  *Id.* at *19-20.

methamphetamine and oxycontin  drug use; those acts were offered as part of the *res gestae* of the crime.  (*Id.*; *see* § I.A., *infra*.)  That evidence would be admitted no matter how the proceedings might be severed across separate trials or separate juries.

There is no decision of the United States Supreme Court clearly establishing a right under the Due Process Clause to separate trials or juries.  Joint trials play a vital role in the criminal justice system. *Richardson v. Marsh*, 481 U.S. 200, 209 (1987).  Joint trials generally serve the interests of justice by avoiding inconsistent jury verdicts and facilitating the efficiency and fairness of the criminal justice system. *Id.* at 209–10.

The Supreme Court has delineated few constitutional rules in this area.  The Court has held that separate trials are constitutionally required where the prosecution intends to introduce the confession of a co-defendant which incriminates another defendant.  *See Bruton v. United States*, 391 U.S. 123, 137 (1968).  The *Bruton* rule is designed to vindicate a defendant's right to confront his accusers, so separate trials are not necessary when the co-defendant is subject to cross-examination.  There was no Confrontation Clause problem during Petitioner's trial because all co-defendants, as well as the informant accomplices, testified and were subjected to cross-examination.

Beyond the *Bruton* rule, the Supreme Court has left the matter of severance to state law and the trial judge's discretion.  The Court remarked in *United States v. Lane*, 474 U.S. 438 (1986), that the denial of a motion for severance does not in and of itself implicate constitutional rights.  The Constitution is implicated only when the failure to sever trials is so prejudicial that it imperils a defendant's right to a fair trial.

*Id.* at 446 n. 8.  Consequently, a "petitioner seeking habeas relief on the basis of a trial court's failure to sever his trial from his co-defendants bears a very heavy burden." *Stanford v. Parker*, 266 F.3d 442, 459 (6th Cir. 2001).

Petitioner erroneously cites *Zafiro v. United States*, 506 U.S. 534, 539 (1993), as establishing constitutional standards for separate trials.  The Sixth Circuit, however, recognizes that *Zafiro* is based on the Federal Rules of Criminal Procedure, not constitutional grounds.  *See Phillips v. Million*, 374 F.3d 395, 398 (6th Cir. 2004) ("*Zafiro* involved the interpretation of Federal Rules of Criminal Procedure 8, 14, and 18, not the United States Constitution. *Zafiro* thus has no precedential weight in reviewing state court proceedings on due process grounds. . . .").

Although *Zafiro's* value as precedent in the habeas context is limited, the Court's analysis is instructive.  In *Zafiro*, the joined co-defendants challenged the failure to sever because they offered conflicting defenses.  The Supreme Court declined to adopt a "bright line" rule requiring severance whenever co-defendants have conflicting defenses. *Zafiro*, 506 U.S. at 538.  "Mutually antagonistic defenses are not prejudicial *per se.*   Moreover, Rule 14 does not require severance even if prejudice is shown; rather, it leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion." *Id.* at 538–39. The Supreme Court noted that "less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice."  *Id.*

Certainly, if limiting instructions would suffice to cure prejudice where defenses actually conflict, in Petitioner's case, where the co-defendants' defenses were in no way

inconsistent,[15] limiting instructions should be sufficient as well.   The trial court

instructed the jury as follows:

> Heath McGowan, Clint McGowan, and Eddie Griffes are all on trial in this case.  The fact that they are on trial together is not evidence that they were associated with each other or that either of them or any of them is guilty.  You should consider each defendant separately.  Each is entitled to have his case decided on the evidence and the law that applies to him.  If any evidence was limited to one defendant only or some defendants, you should not consider it as to any other defendants.
>
> The defendants are each charged with 14 counts, that is, the crime of homicide - open murder; weapons-felony firearm; homicide-felony murder; weapons- felony firearm; home invasion 1st degree; weapons-felony firearm; weapons-firearms-receiving and concealing; weapons - felony firearm; weapons-firearms-larceny; weapons-felony firearm; receiving and concealing stolen property with a value of $1,000.00 or more, but less than $20,000.00; weapons-felony firearms; larceny in a building and weapons-felony firearm.
>
> These are separate crimes and the prosecutor has charged that each defendant committed all of them.   You must consider each crime separately in light of all the evidence.  You must return a separate verdict for each defendant.  For each defendant, as to Count I, you may return a verdict of guilty of open murder, guilty of the less serious crime of second degree murder, or not guilty.  As to the remainder of the 13 counts, you may return a verdict of not guilty or guilty.  Remember that you must consider each defendant separately.
>
> *     *     *
>
> Ladies and gentlemen, I am now going to give you the elements of each of the 14 crimes charged against the defendants which the Prosecutor is required to prove beyond a reasonable doubt.  Each of the defendants has

---

[15]The Michigan Court of Appeals accurately noted that all three defendants raised the same defense: "a denial of any involvement or participation in the crime." *McGowan*, 2009 WL 4827742 at *19; *see also Griffes v. Rivard*, No. 11-cv-14227, 2016 WL 7188096 at *7 (E.D. Mich. Dec. 12, 2016).  There was no aspect of any particular defendant's defense that implicated another defendant.  If the jury found the defendants' defenses credible, they could have found that none of the defendants were guilty.  The defenses were in no way mutually exclusive.

been charged with the same 14 crimes and you must consider each defendant separately and you must consider each crime charged against each of them separately.  Therefore, each of these instructions is worded in the singular for one defendant only.  When you deliberate, you should consider each of the instructions in the singular and apply that instruction to each of the defendants separately.

(Trial Tr. XII, ECF No. 11-15, PageID.3839-3841, 3856.)   It is also apparent that the

jury took the instructions seriously in that their verdicts differed significantly from

defendant to defendant.  (Trial Tr. XIII, ECF No. 11-16, PageID.3905-3913.)

As noted above, other than in the most extreme cases, the Supreme Court has

left the issue of severance to state law and the trial court's discretion.  Petitioner's case

is not an extreme case.  Petitioner has failed to demonstrate that the state courts'

refusal to sever his prosecution from that of his co-defendants or to provide a separate

jury for Petitioner caused him prejudice so severe as to render his trial unfair.  The

state court's refusal to sever is neither contrary to, nor an unreasonable application of,

clearly established federal law.  Accordingly, Petitioner is not entitled to habeas relief.

## V.   Ineffective assistance of trial counsel

Petitioner contends his trial counsel was ineffective for: (A) failing to seek

separate juries or argue competently for separate trials; (B) failing to develop the

defense that Heath acted alone in killing Henry Marrott on July 19 and returned with

others, excluding Clint, on July 20 to ransack the house; (C) failing to call Diane

Howell, Roger Howell and Michael Araujo as alibi witnesses; and (D) failing to object

to prosecutorial misconduct–all to Petitioner's great prejudice.  He raised the separate

juries issue for the first time in a motion for *Ginther* hearing[16] and new trial filed during the pendency of Petitioner's direct appeal.  (Post-trial Hr'g I, ECF No. 11-19.) He raised the remaining issues for the first time in his motion for relief from judgment. (Mot., ECF No. 11-27.)  The trial court flatly rejected Petitioner's claims that his trial counsel[17] were constitutionally ineffective.    (Post-trial Hr'g I, ECF No. 11-19, PageID.3998-3999; Ord., ECF No. 11-30, PageID.4750.)

In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel.  To establish a claim of ineffective assistance of counsel, the petitioner must prove:   (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome.   A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy.   *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996)

---

[16]In *People v. Ginther*, 212 N.W.2d 922 (Mich. 1973), the Michigan Supreme Court approved the process of remanding to the trial court for an evidentiary hearing when an appellant has raised claims of ineffective assistance of counsel that require development of a record.

[17]At trial, Petitioner was represented by two retained attorneys: Lyle Warren and Gail Benda.  (Mot. Tr., ECF No. 11-19, PageID.3938, 3972-3973.)

(holding that counsel's strategic decisions were hard to attack).  The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690.  Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment.  *Id.* at 691.

A.    Separate trials/separate juries

Petitioner has failed to demonstrate that his counsel's performance fell below an objective standard of reasonableness with respect to the argument on Petitioner's motion for separate trials.  Petitioner contends that counsel's separate trial argument lacked citation to federal authorities.  (Br., ECF No. 1-1, PageID.72-73.)  As set forth above, however, the propriety of severance is rarely a constitutional issue and it is generally left to the states.

The Michigan Court Rules mandate severance where it "is necessary to avoid prejudice to substantial rights of the defendant." MICH. CT. R. 6.121(C).  In *People v. Hana*, 524 N.W.2d 682 (Mich. 1994), the seminal Michigan severance decision, the Michigan Supreme Court recognized the import of the Supreme Court's decision in *Zafiro*, the federal authority upon which Petitioner relies, but noted that the state rule imposes heightened requirements for severance that Federal Rule of Criminal Procedure 14 does not impose.  *Hana*, 524 N.W.2d at 690.  The *Hana* court concluded that *Zafiro's* "newly formulated strict standard for severance" brought the previously more liberal federal rule to a point where it was comparable to Michigan's rule.  *Hana*,

524 N.W.2d at 690.  The *Hana* court relied heavily on *Zafiro* in further developing the state standard.

Petitioner's argument fails to identify the federal authorities that he contends his counsel neglected to bring to the trial court's attention.  *Hana* suggests that, even though the state rule differs from the federal rule, the standards are essentially the same.  Although federal authority might provide some additional persuasive force, it could never carry the precedential weight of comparable state authority.  Accordingly, Petitioner has failed to carry his burden to show that his counsel's failure to cite federal authority rendered counsel's performance objectively unreasonable.

Petitioner also complains that counsel failed to seek separate juries.  Counsel testified that he considered such a request futile as the same standard that applies to separate trials applies to separate juries.   (Post-trial Hr'g I, ECF No. 11-19, PageID.3941, 3957-3958, 3966, 3969.)  That was certainly the holding in *Hana*.  *Hana*, 524 N.W.2d at 693 ("The use of separate juries is a partial form of severance to be evaluated under the standard, set forth above, applicable to motion for separate trials.").  The trial court agreed.  (Post-trial Hr'g I, ECF No. 11-19, PageID.3998) ("The Court did make a ruling during the proceedings on separate trials and it's my opinion that moving for a separate jury in this case would be futile.  The issues are the same in both cases and the Court ruled before and still feels the same way, that the defenses were not mutually exclusive and they are not inconsistent and that's the basic standard for granting separate trials and it's the same process for granting separate juries.").  Accordingly, the trial court concluded counsel was not ineffective for failing

to seek separate juries.  (*Id.*, PageID.3998-3999.)  That conclusion is not contrary to clearly established federal law and it is based on a reasonable determination of the facts on this record.  Petitioner is, therefore, not entitled to habeas relief on this issue.

### B.    Heath acted alone

Petitioner next contends that his counsel was ineffective for failing to exploit the defense that Heath acted alone.  According to Petitioner, the testimony of Timothy Hannah and Jeffrey Walker reveals that Heath told them he had picked up Henry Marrott hitchhiking, took Marrott to his home, and killed him for drugs.  Petitioner argues that this testimony shows that Heath acted alone.  His counsel, he claims, should have exploited the testimony to pin the crime on Heath to the exclusion of Petitioner.

Petitioner conveniently misreads the content and import of the testimony at issue.  Timothy Hannah testified as follows:

Q:    What did Heath want when he came to the house?

A:    He wanted me to help him go back to Walking Sam's house where he was at and help him burn down the house.

Q:    Why did he want to burn down the house?

A:    Because he came over and told me that he had just left Walking Sam's house and that he had beat him with numchucks, to death.

Q:    Did he tell you why he went there?

A:    To rob him.

Q:    What did he say he was going to get in this robbery?

A:    Money and drugs.

- 44 -

Q:      Did he explain what kind of drugs at that time?

A:      Oxycontin.

*       *       *

Q:      Did he tell you why he felt the need to burn down the house, other than the fact that Walking Sam was dead, of course?

A:      Right. He said that he might have left behind a syringe.

Q:      At the house?

A:      Yeah.

Q:      Did he say why he might have left behind a syringe?

A:      I don't know why, maybe too high, I guess.

Q:      Did Heath indicate what he beat Walking Sam with?

A:      Yeah. He said he beat him with a pair of numchucks. He said while he was beating him, he had his foot on his throat and as he stepped away, he said the old man was going into a seizure and vomited and defecated on himself.

Q:      So he went to the bathroom in his pants?

A:      Yeah.

Q:      And he vomited on himself?

A:      Yes. Yeah, that's what he said.

Q:      At this point, he was hitting him, with his foot on his throat, is that what he said?

A:      Yeah. He said he had his foot on his throat and beat him with a numchuck.

Q:      And he was that descriptive to you?

A:      Yeah.

Q:      Now at that time he told you that he rolled Sam in some carpeting,
         is that correct?

A:      Yes.

Q:      That was the way it was related to you?

A:      Yeah.

Q:      Did he say what else he found in the house?

A:      He said he got some old coins and an old gun.

(Trial Tr. VI, ECF No. 11-9, PageID.2277-2280.)   The next day, Timothy Hannah

continued his testimony:

Q:      Do you recall also telling the police that he had picked him up
         hitchhiking?

A:      Yeah. Yeah.

Q:      Do you recall telling the police that he beat him up with
         numchucks?

A:      Yes.

Q:      And that he shot up with Oxycontin inside the house and that the
         reason he wanted to go back was because he left some needles?

A:      (no audible answer)

                              *      *      *

Q:      Did you make several statements to the police that Heath
         McGowan picked up Henry Marrott and took him to his home?

A:      I don't know if he picked him up or – I'm not exactly sure how it
         come (sic) about.

Q:      I'm going to have you review police report number 42, which you
         made the statement on November 14, 2002. I'd ask that you read
         the last paragraph to the second page.

- 46 -

A:      (reviews report) Okay.

Q:      Do you recall that now? Do you recall Heath saying that to you?

A:      I think it's been so long. I mean, it sounds right.

Q:      Do you recall Heath saying anybody was with him when he picked up Mr. Marrott and took him to his home?

A:      No. I mean – I haven't – the conversations we had, he's never mentioned being with anybody else.

(Trial Tr. VII, ECF No. 11-10, PageID.2405-2406, 2437-2438.) Jeffrey Walker testified

as follows:

Q:      Do you recall having a conversation with [Heath] concerning a murder or a homicide?

A:      Something about an old guy.

Q:      What did he say about an old guy?

A:      He said he picked up this old guy, walking down the street or something, and gave him a ride home.

Q:      Did he say what happened to this old guy?

A:      He was killed.

Q:      Did he say why he had done this?

A:      Pills, was my understanding, drugs, Oxycontins.

(Trial Tr. VII, ECF No. 11-10, PageID.2582.)

Plaintiff contends that this testimony establishes that Heath McGowan acted

alone on July 19, 2002, when he picked up Henry Marrott hitchhiking, took him home,

and killed him.  (Br., ECF No. 1-1, PageID.77.)  Only later, on July 20, 2002, did Heath

- 47 -

come back with others and rob the home.  (*Id.*)  That defense, Petitioner argues, would eliminate any basis for murder charges against him.

Petitioner's argument is flawed in its very premise.  The testimony he relies upon does not "establish" that Heath acted alone on July 19, or that the robbery was perpetrated by the group at a time separate from the murder.  Indeed, the testimony does not logically require the conclusion that Heath picking up Henry Marrott hitchhiking and Henry Marrott's murder was part of an uninterrupted series of events or that the incidents were temporally proximate at all.  Neither witness said that was the case.

More importantly, however, Petitioner's fanciful interpretation of Hannah's and Walker's testimony is necessarily inconsistent with the testimony of virtually every other witness, including Heath and Clint.  Although it would certainly offer a convenient and sentence-shortening defense if the murder and robbery were separate events, the record simply does not support it.  "Omitting meritless arguments is neither professionally unreasonable nor prejudicial."  *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013).  The Michigan courts' rejection of this ineffective assistance claim is a reasonable application of *Strickland* and it is based on a reasonable determination of the facts on this record.  Petitioner is not entitled to habeas relief.

C.    Failing to call alibi witnesses

Petitioner next claims that counsel rendered constitutionally ineffective assistance when they waived the alibi witnesses Diane Howell, Roger Howell, and Michael Araujo.  Petitioner states "[t]hese witnesses would have provided corroboration

- 48 -

of Petitioner Clint McGowan's testimony concerning his whereabouts on July 19 and July 20, 2002." (Br., ECF No. 1-1, PageID.79.) Petitioner does not offer affidavits from these witnesses or even synopses of their expected testimony to back up his statement. Instead, he simply notes that his counsel waived the witnesses and suggests counsel did so without justification. (*Id*.)

Petitioner's suggestion that counsel waived the witnesses without justification is not supported by the record.    With respect to Petitioner's alibi witnesses, Petitioner's counsel stated:

A:    [T]he alibi witnesses that were discussed for Clint McGowan, I did speak with several of those witnesses. In many cases we found them not to be of any substantial support for Clint's case. We were able to place one on the stand during the trial and then the other two we were planning to introduce as witnesses for Clint's alibi were subsequently barred from testifying.

*    *    *

Q:    Do you recall what other witnesses you interviewed?

A:    I had a brief conversation with Clint's girlfriend at the time. I cannot recall her name. She was—eventually she ended up as a prosecution witness and testifying for the prosecution. I interviewed an individual that would have discredited some of the testimony of Mr. McGowan's girlfriend, who we eventually determined to be unreliable and not an effective witness. In addition, I believe I spoke with a couple of other alibi witnesses that could not establish—effectively establish the time frame that would have been necessary to give Clint any kind of alibi.

(Post-trial Hr'g I, ECF No. 11-19, PageID.3943-3944, 3955-3956.) That is the only record evidence regarding the likely testimony of the waived alibi witnesses. It does not support Petitioner's contention that his counsel's waiver of the witnesses was

- 49 -

objectively unreasonable.  "A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim." *United States v. Ashimi*, 932 F.2d 643, 650 (6th Cir. 1991) (footnote omitted).[18]

The trial court rejected Petitioner's ineffective assistance claim relating to the waived witnesses, adopting the reasoning of the prosecution: "If counsel determined that their stories would have been inconsistent, and therefore would have weakened

---

[18]*See also Pillette v. Berghuis*, 408 F. App'x 873, 887 (6th Cir. 2010) ("The salient point is that nobody knows what she would have said.  Speculation cannot suffice to establish the requisite prejudice."); *Neverson v. Farquharson*, 366 F.3d 32, 45 (1st Cir. 2004) ("[H]e has not offered any evidence of what that person would have said, let alone shown that the lack of such testimony materially prejudiced his defense."); *Zettlemoyer v. Fulcomer*, 923 F.2d 284, 298 (3rd Cir. 1991) ("Zettlemoyer cannot meet his burden . . . based on vague and conclusory allegations that some unspecified and speculative testimony might have established his defense."); *Goins v. Warden, Perry Corr. Inst.*, 576 F. App'x 167, 173 (4th Cir. 2014) ("[Petitioner's] failure to [show] what an expert witness would have testified regarding the mental health evidence . . . reduces any claim of prejudice to mere speculation and is fatal to his claim."); *Day v. Quarterman,* 566 F.3d 527, 538 (5th Cir. 2009) ("[T]o prevail on an ineffective assistance claim based on counsel's failure to call a witness, the petitioner must . . . set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense."); *Patel v. United States*, 19 F.3d 1231, 1237 (7th Cir. 1994) ("Where a petitioner claims his trial counsel failed to call a witness, he must make a specific, affirmative showing as to what the missing evidence would have been, and prove that this witness's testimony would have produced a different result.") (internal citations omitted); *United States v. Vazquez-Garcia*, 211 F. App'x 544, 546 (8th Cir. 2007) ("Recognizing the deferential standard when reviewing the conduct of counsel, we decline to find prejudice in this situation when there is no evidence other than speculation to support the finding."); *Smith v. Adams*, 506 F. App'x 561, 565 (9th Cir. 2013) ("Smith merely speculates as to the expert testimony that could have been produced, but '[s]peculation about what an expert could have said is not enough to establish prejudice.'"); *Sullivan v. DeLoach*, 459 F.3d 1097, 1109 (11th Cir. 2006) ("This prejudice burden is heavy where the petitioner alleges ineffective assistance in failing to call a witness because 'often allegations of what a witness would have testified to are largely speculative.'").

his client's case, such a waiver would have been the only proper thing to do." (Br., ECF No. 11-28, PageID.4735; Ord., ECF No. 11-30, PageID.4750.)   The court's determination is neither contrary to nor inconsistent with *Strickland*, or any other clearly established federal law; and it is amply supported by the record.

### D.   Failure to object to prosecutorial misconduct

Petitioner last argues that his trial counsel was ineffective for failing to object to the prosecutorial misconduct identified in § I above and for failing to object to the testimony of Heather Wisniewski, Petitioner's girlfriend, that Petitioner had smashed her head into a lamp.  With regard to the failure to object to the alleged instances of prosecutorial misconduct, as set forth above in § I, Petitioner's contentions that the prosecutor acted inappropriately have no merit.  "The failure to raise a futile objection is not evidence of ineffective assistance." *Blackshere v. Maclaren*, No. 15-1904, 2016 WL 561521 at *4 (6th Cir. Feb. 9, 2016) (citing *Harris v. United States*, 204 F.3d 681, 683 (6th Cir. 2000).  Counsels' failure to object during the prosecutor's closing argument does not, therefore, rise to the level of constitutionally ineffective assistance of counsel.

The failure to object to the testimony regarding Petitioner's assault on his girlfriend is a closer question; but, Petitioner has failed to carry his burden with regard to that claim as well.  Heather Wisniewski testified at two different times.  During her initial testimony, she testified that she lived with Petitioner "off and on" at his parents' home.  (Trial Tr. III, ECF No. 11-6, PageID.1710.)  She explained "[W]e'd fight, I'd go to my mom's.  We'd make up and I would come back."  (*Id.*)

During her second trip to the witness stand Heather elaborated: "Clint and I were drinking one night and we got into a fight and he actually smashed my head into a light up above on the ceiling and I left that night and my face and head were bleeding and I went back to my mother's and stayed." (Trial Tr. VI, ECF No. 11-9, PageID.2051-2052.) That sentence is the only reference to the incident in the trial transcript. It does not appear the prosecutor expected the testimony; he was simply re-covering the ground that had been covered three trial days, and thirteen calendar days, before during the initial preliminary stage of Wisniewski's testimony.

It is not difficult to conceive of a strategic reason to forego an objection in this instance. Although the assault may not be an appropriate subject of testimony as a "prior act" of Petitioner, it was certainly permissible to show Ms. Wisniewski's motive in leaving Petitioner's home in favor of her mother's home. Thus, "it is not at all clear that any objection that [Petitioner's] attorney might have made would have been sustained and the evidence excluded." *Cobb v. Perini*, 832 F.2d 342, 347 (6th Cir. 1987).

Even if the evidence were properly excluded, it would have been a reasonable strategic decision to not challenge the testimony because it would "focus[] undue attention on the matter." *Id.* at 347-348; *see also Kissner v. Palmer*, 826 F.3d 898, 903 (6th Cir. 2016) ("'[N]ot drawing attention to the statement may be perfectly sound [strategy].' And considering that Kissner was on trial for arson, not assault, 'focusing undue attention on the matter' was undesirable.") (citations omitted). Thus, it cannot be said that counsels' failure to object was <u>objectively</u> unreasonable.

- 52 -

Whether or not counsels' decision to not object was reasonable, Petitioner simply has not and cannot show resulting prejudice. In *Hutton v. Mitchell*, 839 F.3d 486 (6th Cir. 2016), the Sixth Circuit reiterated that "'[b]ecause the decision to object in a particular instance is made in the strategic context of an entire trial, any single failure to object does not constitute error unless the information introduced 'is so prejudicial to a client that failure to object essentially defaults the case to the state.'" *Id.* at 505 (quoting *Hodge v. Haeberlin*, 579 F.3d 627, 649 (6th Cir. 2009)). Wisniewski's brief reference to a physical confrontation with Petitioner did not default this case to the prosecution. Where three eyewitnesses placed Petitioner at the scene as a participant in the breaking and entering and larceny, crimes that resulted in Henry Marrott's death at the hands of Heath McGowan (not Petitioner), fleeting reference to a single incident of domestic violence would have a negligible impact on the case, if it had any impact at all.

Under these circumstances, Petitioner has failed to show that the trial court's rejection of Petitioner's ineffective assistance of trial counsel claim is contrary to, or an unreasonable application of, *Strickland*. Certainly, the factual determinations upon which that decision is based are reasonable on the record.

## VI.    Ineffective assistance of appellate counsel

Finally, Petitioner argues that his appellate counsel was ineffective for failing to raise the issues he raised in his motion for relief from judgment (habeas issues I, IV, V, and VI).

An appellant has no constitutional right to have every non-frivolous issue raised on appeal. "'[W]innowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983)). To require appellate counsel to raise every possible colorable issue "would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions." *Strickland*, 466 U.S. at 688.

As the Supreme Court has observed, it is difficult to demonstrate that an appellate attorney has violated the performance prong where the attorney presents one argument on appeal rather than another. *Smith v. Robbins*, 528 U.S. 259, 289 (2000). In such cases, the petitioner must demonstrate that the issue not presented "was clearly stronger than issues that counsel did present." *Id.*

Petitioner cannot make that showing because, as set forth in detail above, the arguments his appellate counsel failed to raise lack merit. Where a claim lacks merit, appellate counsel is not ineffective in declining to raise the issue on direct appeal. *See Moore v. Mitchell*, 708 F.3d 760, 776 (6th Cir. Feb. 26, 2013) ("[A] petitioner cannot show that appellate counsel was ineffective for failing to raise a claim on appeal if the underlying claim itself lacks merit."); *Burton v. Renico*, 391 F.3d 764, 781-82 (6th Cir. 2004) (where claim of prosecutorial misconduct lacks merit, counsel is not ineffective in declining to raise issue on appeal).

The trial court's conclusion that Petitioner had failed to show ineffective assistance of appellate counsel is, therefore, neither contrary to, nor an unreasonable application of, *Strickland*.  Petitioner is not entitled to habeas relief on his ineffective assistance of appellate counsel claim.

### Recommended Disposition

For the foregoing reasons, I respectfully recommend that the habeas corpus petition be denied.  I further recommend that a certificate of appealability be denied. See *Slack v. McDaniel*, 529 U.S. 473 (2000).


Dated:  March 31, 2017                          _____
                                                PHILLIP J. GREEN
                                                U.S. Magistrate Judge


### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).