UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Clint Allan McGowan,            )
      Petitioner,          )
                       )    No. 1:13-cv-904
-v-                      )
                       )    HONORABLE PAUL L. MALONEY
Duncan MacLaren,           )
      Respondent.        )
                       )

## OPINION AND ORDER

This matter is before the Court on Petitioner Clint McGowan's objections to the Report and Recommendation (R&R) issued by Magistrate Judge Phillip J. Green. (ECF No. 18.) On August 19, 2013, Petitioner filed a motion under 28 U.S.C. § 2254 seeking relief from a final state court decision (ECF No. 1); with leave of the Court, he amended his petition on October 17, 2013. (ECF No. 6.) The State of Michigan, through MacLaren, filed its response on April 25, 2014. (ECF No. 10.) Initially, the Magistrate Judge recommended this Court deny McGowan's petition as time barred. (ECF No. 14.) However, this Court rejected the first R&R "[b]ecause the State deliberately waived any statute of limitations defense." (ECF No. 16 at PageID.5153.) Thus, this Court once again referred this matter to the Magistrate Judge for an R&R on the merits of the petition. (*Id.*) The Magistrate Judge issued an R&R on March 31, 2017, recommending that the petition be denied. (ECF No. 17.) Petitioner filed the instant objections on April 14, 2017. (ECF No. 18.)

## I.    Statement of Facts & Factual Objections

As an initial matter, the Court adopts those facts contained in the Magistrate Judge's report to which Petitioner has no objection.

Petitioner does object to the following facts:

> (1)    A group of six people were at Mr. Marrott's house when he was beaten.
> (2)    The other three were Petitioner, his brother Heath and his friend Edward Griffes. (Trial Tr. V, ECF No. 11-8, PageID.1827-1828; Trial Tr. VII ECF No. 11-10, PageID.2468; Trial Tr. IX ECF No. 11-12, PageID.2817.)
> (3)    The four males went inside. (Trial Tr. V, ECF No. 11-8, PageID.1831; Trial Tr. VII, ECF No. 11-10, PageID.2474; Trial Tr. IX, ECF No. 11-12, PageID.2821.)

(ECF No. 18 at PageID.5209–10)

Petitioner asserts that the facts in question are not supported by the testimony of the witnesses contained in the record. Petitioner argues that the testimony of Michael Hansen, (ECF No. 11-8 at PageID.1827–43), Melissa Mudget, (ECF No. 11-10 at PageID.2468–86), and Tara Waldorf, (ECF No. 11-12 at PageID.2817–21), does not identify him as being present, any of his actions on the night of the robbery, or that he ever even entered the Marrott home. (ECF No. 18 at PageID.5210.) The specific portions of the testimony indicated by the Petitioner as contradicting the Magistrate Judge's findings of fact, however, do not support his assertion.

While Mr. Hansen's testimony is less than clear, it does establish several things: (1) himself, Heath McGowan, Mr. Griffes, and Petitioner discussed the robbery of the Marrott home together prior to going to the home (ECF No. 11-8 at PageID.1824–25); the four men along with two girls went to the Marrott home to steal OxyContin pills (*Id.* at PageID.1826–

2

27); at the house, the four men got out of the car and entered the home (*Id.* at PageID.1831); while in the home, the four men ransacked the place looking for the OxyContin (*Id.* at PageID.1833–35); and (5) while in the home, an altercation occurred between Heath McGowan and Mr. Marrott. (*Id.* at PageID.1835).

Ms. Mudget's testimony indicates that the same four men, Heath McGowan, Mr. Hansen, Mr. Griffes, and Petitioner, along with herself and Ms. Waldorf, all drove to the Marrott home together to get pills. (*See* ECF No. 11-10 at PageID.2468–71.) Ms. Mudget further testifies that once they were at the home the four men got out of the car and entered the house. (*Id.* at PageID.2474–75.) Likewise, Ms. Waldorf's testimony also indicates that the same six individuals traveled to the Marrott home and that the four men got out of the car and entered the house. (ECF No. 11-12 at PageID.2816–21.)

The crux of Petitioner's argument against the Magistrate Judge's findings of fact is that none of the testimony described above *specifically* indicates that he went into the house or that any of his actions occurred in the house. (ECF No. 18.) Petitioner, however, relies on isolated segments of testimony to support his assertions without considering those segments in the larger context of the testimony as a whole. The testimony does not need to be a second-by-second account of Petitioner's actions in order to establish an outline of the events that occurred that night. The testimony of the three witnesses described above was consistent and adequately described the events of that night: six individuals—Heath McGowan, Eddie Griffes, Mike Hansen, Melissa Mudget, Tara Waldorf, and Petitioner—went to a house, later identified as the Marrott home, to steal pills and once at the house the four men got out of the car and went inside.

3

Here, Petitioner is asking the Court to use a hyper-technical reading of the record when coming to its conclusions because no witness specifically testified he "entered" the house. The context of the testimony as a whole, however, makes it clear that Petitioner was one of the six individuals that went to the Marrott home and that when the group arrived at the home the four men in the car, including Petitioner, got out of the car and entered the house. Accordingly, Petitioner's objections to the Magistrate Judge's findings of fact are **OVERRULED,** and the Court **ADOPTS** the Magistrate Judge's findings of fact in his report in full.

## II.    Legal Framework

With respect to a dispositive motion, a magistrate judge issues a report and recommendation, rather than an order. After being served with a report and recommendation (R&R) issued by a magistrate judge, a party has fourteen days to file written objections to the proposed findings and recommendations. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). A district court judge reviews de novo the portions of the R&R to which objections have been filed. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Only those objections that are specific are entitled to a de novo review under the statute. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986) (*per curiam*) (holding the district court need not provide de novo review where the objections are frivolous, conclusive or too general because the burden is on the parties to "pinpoint those portions of the magistrate's report that the district court must specifically consider"). Failure to file an objection results in a waiver of the issue and the issue cannot be appealed. *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005); *see also Thomas v. Arn*, 474 U.S. 140, 155 (upholding the Sixth Circuit's

practice). The district court judge may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

## III.    Analysis & Legal Objections

Petitioner asserts that he is entitled to relief on several grounds: (1) prosecutorial misconduct, (2) violation of due process by denial to appoint an expert witness, (3) violation of due process by exclusion of an alibi witnesses, (4) violation of due process by denial of a motion for separate trials/juries, (5) ineffective assistance of defense counsel, and (6) ineffective assistance of appellate counsel. (ECF No. 6.) After examining each issue on the merits, the Magistrate Judge found each of Petitioner's arguments lacked merit and recommended that the Court deny his petition. (ECF No. 17.) Petitioner now lodges several objections to the Magistrate Judge's legal recommendations. (ECF No. 18.)

### A.    Prosecutorial Misconduct

Petitioner first alleges the prosecutor in his case presented improper arguments in his closing statement and rebuttal. (ECF No. 6 at PageID.133.) Specifically, Petitioner alleges three instances of improper argument, which he views as "prosecutorial misconduct": (1) introduction of excluded prior bad acts evidence, (2) arguing facts not in evidence, and (3) misleading the jury to believe the burden of proof was on Petitioner at trial. (*Id.*)

In a habeas corpus action, a petitioner must do more than just show erroneous prosecutorial conduct in order to be entitled to relief. *See Darden v. Wainwright*, 477 U.S. 168, 181 (1986). There is no standalone right to be free from any "prosecutorial misconduct" in the United States Constitution. Rather, the right sounds in due process. "The relevant

question is whether the prosecutors' comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id.* (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974)) (internal quotations omitted). "[T]he remarks must be examined within the context of the trial to determine whether the prosecutor's behavior amounted to prejudicial error." *United States v. Young*, 470 U.S. 1, 12 (1985).

In *Macias v. Makowski*, the Sixth Circuit outlined a two-part test to determine if alleged prosecutorial misconduct rises to the level of violating a defendant's due process rights. 291 F.3d 447 (6th Cir. 2002). The Court must first consider whether the prosecutor's conduct and remarks were improper, and second apply a four-factor test to determine "whether the impropriety was flagrant and thus violated the defendant's due process rights." *Id.* at 452 (quoting *United States v. Carter*, 236 F.3d 777 (6th Cir. 2001)) (internal quotations omitted). The four factors are "(1) whether the conduct and remarks of the prosecutor tended to mislead the jury or prejudice the defendant; (2) whether the conduct or remarks were isolated or extensive; (3) whether the remarks were deliberately or accidentally made; and (4) whether the evidence against the defendant was strong." *Carter*, 236 F.3d at 783; *accord United States v. Carroll*, 26 F.3d 1380, 1385 (6th Cir. 1994).

Petitioner here has failed to show that the contested remarks of the prosecutor in his case rise to the level of violating his due process rights.

### 1.    Introduction of Prior Bad Acts Evidence

Petitioner first alleges his due process rights were violated when the prosecutor brought up his methamphetamine use in her rebuttal statements. (ECF No. 6 at PageID.133.) Specifically, Petitioner takes issue with the statement: "Heath, Clint, and Eddie

are in that same category. He can't separate those three out from all the other witnesses because they're all meth addicts. They're all using." (ECF No. 1-1 at PageID.41.) After reviewing the record, the Magistrate Judge found that while this statement may have been slightly improper, the inclusion of the statement did not rise to the level of violating Petitioner's due process rights. (ECF No. 17 at PageID.5167–68.) Petitioner takes issue with the Magistrates Judge's conclusion that the statements did not amount to a violation of due process, and argues that the prosecutor used the statement to imply that "if [Petitioner] ever used methamphetamine, he had to be part of the killing." (ECF No. 18 at PageID.5212.) Petitioner's argument, however, fails to place the prosecutor's statement into the context of the rebuttal as a whole.

The specific section of the rebuttal argument Petitioner is challenging reads as follows:

> During [Defendant Griffes' counsel's] closing he said all the witnesses are meth addicts and that's doubt. Well, if that's true, then Heath, Clint, and Eddie are in the same category. He can't separate those three out from all the other witnesses because they're all meth addicts. They're all using. So that just doesn't make any sense because he wants you to believe that Heath's memory was perfectly fine even though he was a meth addict.

(ECF No. 11-15 at PageID.3829–30.) The statement was not being used, as Petitioner alleges, to draw a connection between his drug use and the murder charge, but rather it was being used to challenge assertions made by Defendant Griffes' counsel that the testimony of Mr. Hansen, Ms. Mudget, and Ms. Waldorf could not be trusted because they were meth addicts and their memories were impaired. (*Id.* at PageID.3778–80.) While the prosecutor certainly may have exaggerated the point, since Defendant Griffes' counsel never said that *all* of the witnesses were meth addicts, and indeed did present evidence of Petitioner's drug-

7

use, the prosecutor's statements were not so egregious to violate Petitioner's due process rights.

Petitioner himself testified to his methamphetamine use (ECF No. 11-14 at PageID.3328), and the testimony of other witnesses strongly implied that he was a methamphetamine user. Further, the prosecutor did not present the prior bad acts evidence to the jury to assert that Petitioner must have committed the crime because of methamphetamine use or to prove the character of Petitioner "in order to show action in conformity therewith." MICH. R. EVID. 404(b). The prosecutor presented the evidence to the jury to call into question the validity of Petitioner's and his co-defendants' testimony. Moreover, the evidence against Petitioner was quite extensive and it is unlikely that the brief mention of Petitioner's drug use had any effect on the jury's verdict. Accordingly, Defendant's first objection is **OVERRULED.**

### 2. Arguing Facts Not in Evidence

Petitioner next claims that the prosecution argued facts not in evidence by presenting the following statements to the jury during closing:

(1) had to have seen him beating Henry and did nothing to stop him, just watched him beat this little man senseless
(2) They all entered the home and confronted Henry and Henry Marrott ended up dead as a result of their actions.
(3) They did intend to kill him by their actions during the killing or their lack of action from stopping Heath and you can infer premeditation by their actions, what they said, what they did, how they did it
(4) The testimony of Mike, Melissa and Tara put Clint and Eddie right there along side Heath. They aided or encouraged Heath and they're as guilty as Heath, who struck the fatal blows...

8

(ECF No. 1-1 at PageID.46–47.)

Petitioner asserts that there is no evidence in the record that places him in the room when his brother, Heath McGowan, killed Mr. Marrott, or even at the Marrott home on the night of the murder. (ECF No. 18 at PageID.5213.) The Magistrate Judge found that there was enough evidence in the record to allow the prosecutor to make the challenged inferences and present them to the jury. (ECF No. 17 at PageID.5168–70.) Petitioner argues that the Magistrate Judge mischaracterized the evidence and reasserts that the inferences made by the prosecutor were improper because "not one witness testified that Clint McGowan was even in the house." (ECF No. 18 at PageID.5213.)

While it is true that no witnesses specifically testified that Petitioner was in the house and saw the murder, there was ample circumstantial evidence placing Petitioner at the Marrott home on the night of the murder, and in the house when the murder occurred. *See supra* Part I. Three different eyewitnesses testified that the six people, Heath McGowan, Eddie Griffes, Mike Hansen, Melissa Mudget, Tara Waldorf, and Petitioner, were all at the Marrott home on the night of the murder. *Id.* Further, the same three witnesses consistently testified that the four men got out of the car, two went in the house from the front and the other two went in the back, they stayed in the house roughly between fifteen and twenty minutes, and returned from the house rambunctious with stolen property. (ECF No. 11-8 at PageID.1831-33; ECF No. 11-10 at PageID.2474–77; ECF No. 11-12 at PageID.2821–23.) Moreover, both Ms. Mudget and Ms. Waldorf testified that Petitioner came out of the house carrying a lock box and appeared angry with Heath. (ECF No. 11-10 at PageID.2476-77; ECF No. 11-12 at PageID.2822-23.)

The eyewitness testimony clearly put the Petitioner in the Marrott home alongside the other co-defendants. A prosecutor "must be given leeway to argue reasonable inferences from the evidence." *United States v. Collins*, 78 F.3d 1021, 1040 (6th Cir. 1996); *accord Byrd v. Collins*, 209 F.3d 486, 535 (6th Cir. 2000). That is precisely what the prosecutor did in this case and at a bare minimum, the State Court's conclusion that the argument did not violate Petitioner's due process rights was not contrary to clearly established law. The testimony of the three cooperating eyewitnesses provide enough evidence that the prosecutor could reasonably infer that Petitioner saw the murder of Mr. Marrott or, at the very least, was in the home when Mr. Marrott was murdered and saw the aftermath on his way out of the house. Accordingly, Petitioner's second objection to the Magistrate Judge's recommendation is **OVERRULED.**

### 3.    Shifting the Burden to Defense

Finally, Petitioner claims that the prosecutor mislead the jury to believe that the burden of proof was on him when the prosecutor argued: "You look at Clint's statement and how it can't be true and you look at all these other witnesses who -- who don't support this so-called alibi. That's how you decide who did it." (ECF No. 1 at PageID.48.) After reviewing the record, the Magistrate Judge found that, taken on their own, the statements in question did seem to cross the line into shifting the burden of proof; but, in the context of the rebuttal argument as a whole, the statements merely invited the jury to look at the evidence objectively to see who's testimony was corroborated and who's was not. (ECF No. 17 at PageID.5172.) Petitioner argues that the Magistrate Judge ignored established case law in *Nishikawa v. Dulles* that "the mere disbelief of a witness' testimony cannot serve to fill an evidentiary gap

in the case; it will not justify a conclusion that the opposite of the witness' testimony is true in the absence of any independent evidence affirmatively supporting that conclusion." 356 U.S. 129 (1958).

The entire section of the prosecutor's rebuttal that contains the alleged impermissible statements reads as follows:

> Clint's alibi, you know both Schoonmaker and Heather Wisniewski show that he can't be telling the truth because if Schoonmaker were there and Heather wasn't there, then Clint's not there. I mean, that's basically what came out from those three witnesses. Defense Counsel asks you, how do you decide who did it? Well, you start with the co-defendants who were there. You get others who corroborate the co-defendants. You add their testimony into the mix. You look at Clint's statement and how it can't be true and you look at all these other witnesses who—who don't support this so-called alibi. That's how you decide who did it. You've got to look at each piece as it relates to the case and I think if you do that, start with the co-defendants, throw in the other witnesses and then throw in Clint's statement, you'll see it doesn't make any sense.

(ECF No. 11-15 at PageID.3827.) Looking at the alleged improper statements in context, the prosecutor does not attempt to unconstitutionally shift the burden of proof onto Petitioner, but rather points to inconsistencies between Petitioner's testimony and the testimony of other witnesses that supposedly supported his alibi. Additionally, the prosecutor does not argue that disbelief of Petitioner alone should be the basis of disbelief of his defense. The prosecutor specifically points to the testimony of the cooperating eyewitnesses as the affirmative evidence that the jury should consider in evaluating the credibility of Petitioner's alibi. Particularly, if you look at one section of the argument—"[y]ou've got to look at each piece as it relates to the case and I think if you do that, start with the co-defendants, throw in

the other witnesses and then throw in Clint's statement, you'll see it doesn't make any sense"—it is apparent that the prosecutor simply asked the jury to question whether the alibi defense made sense when compared to the other, corroborated testimony. The prosecutor's statements, in their full context, did not violate Petitioner's due process rights. Therefore, Petitioner's third objection to the Magistrate Judge's recommendation is **OVERRULED**.

## B.    Denial of Motion to Appoint Expert Witness

Petitioner next claims that the state trial court violated his due process rights by denying his motion to appoint an expert witness to testify for the defense. (ECF No. 6 at PageID.134.) For trial, Petitioner and his co-defendants sought to retain Dr. Ben Kuslikis, an expert in the fields of pharmacology and toxicology, to testify as to the effects of methamphetamine use on cognitive abilities and memory recall. (ECF No. 11-3 at PageID.399–402.) The state trial court denied the motion to appoint the expert witness on the ground that the witness would be called for the sole purpose of challenging the credibility of the prosecution's lay witness. (*Id.* at PageID.410–11.) In coming to its decision, the state court held that an expert witness could not be appointed on behalf of an indigent defendant for the sole purpose of impeaching the credibility of other witnesses, the witnesses themselves had already testified to their memory problems, and the defense could further address the credibility on cross without the need for an expert witness. (*Id.*) The Court also cited several Michigan cases to support its determination that the defense motion should be denied. (*Id.*)

Petitioner now challenges the state trial court's denial of the motion on the ground that it violated the precedent set forth in *Ake v. Oklahoma*, 470 U.S. 68 (1985). After examining the facts of the case and the relevant case law, the Magistrate Judge determined

12

that no Supreme Court decision had specifically expanded the scope of *Ake* to include non-psychiatric experts and thus the question of whether a trial court had to appoint a non-psychiatric expert was still open and not clearly established federal law. (ECF No. 17 at PageID.5178.) Further, the Magistrate Judge found that even if applying *Ake* to non-psychiatric experts were clearly established federal law, Petitioner had failed to show that the expert testimony was necessary to or would have aided his ultimate defense. (*Id.* at PageID.5179–80.) Petitioner argues the Magistrate Judge erroneously determined that *Ake* did not apply in this case, that the testimony of Dr. Kuslikis would have been duplicative, and that the prosecution witness, Detective Wolters, did not offer expert testimony. (ECF No. 18 at PageID.5214.)

In *Ake*, the Supreme Court held that

> [W]hen a defendant demonstrates to the trial judge that his sanity at the time of the offense is to be a significant factor at trial, the State must, at a minimum, assure the defendant access to a competent psychiatrist who will conduct an appropriate examination and assist in evaluation, preparation, and presentation of the defense.

470 U.S. at 83. Petitioner relies heavily on the holding in *Ake*, but fails to recognize two key distinctions between the facts of *Ake* and his case. First, and foremost, Petitioner was not seeking the assistance of a psychiatric expert. As of yet, the Supreme Court has not expanded the holding in *Ake* to apply to the appointment of non-psychiatric experts. *See, e.g., Caldwell v. Miss.*, 472 U.S. 320, 323 n.1 (1985) (refusing to apply the holding in *Ake* to the appointment of a criminal investigator, fingerprint expert, and ballistics expert).  As such, there is no clearly established law holding that a trial court must provide an indigent

defendant with the funds to procure an expert other than a "competent psychiatrist." *McWilliams v. Dunn*, 137 S. Ct. 1790, 1794 (citing *Ake*, 470 U.S. at 83). The expert that Petitioner requested was not a psychiatrist, but one who specialized in pharmacology and toxicology. Since it is unclear whether a court is required to provide to an indigent defendant an expert like one he requested, the decision to deny Petitioner's motion to appoint an expert witness was not and could not have been an objectively unreasonable application of *Ake. See Mason v. Mitchell*, 320 F.3d 604, 615 (6th Cir. 2003).

Second, the purpose for which Petitioner sought to retain Dr. Kuslikis is wholly different from the purpose outlined in *Ake*. In *Ake*, the sanity of the defendant at the time of the crime was a key factor in the case as the defendant was presenting an insanity defense. 470 U.S. at 72–73. There, the Court reasoned that in cases where the sanity of a defendant at the time of the crime is a central factor in the defense, the defendant's need for a psychiatrist is apparent. *Id.* at 82. The Court further reasoned that "[i]t is in such cases that a defense may be devastated by the absence of a psychiatric examination and testimony . . . ." *Id.* As such, the psychiatric expert's testimony is likely to dramatically affect the jury's factual determination of a defendant's sanity, while the absence of such testimony could result in a gross miscarriage of justice. *See id.*

In contrast, Petitioner sought to obtain an expert witness for the sole purpose of impeaching the credibility of a prosecution witness—and not even an *expert* witness. Although the effects of methamphetamine on frequent users was an important issue in the case, Petitioner's defense did not depend on the testimony of an expert witness in order to call into question the accuracy of the prosecution witness's testimony. As the trial court

14

pointed out, all of the witnesses whose testimony Petitioner wished to call into question readily admitted to having memory problems due to methamphetamine use, and Petitioner had an ample opportunity to address those memory problems on cross-examination. Indeed, throughout his testimony, Mr. Hansen, one of the key witnesses for the prosecution, repeatedly acknowledge that his memory of the events before, during, and after the trip to the Marrott Home was severely impaired. (ECF No. 11-8 at PageID.1808–65.) Likewise, on cross-examination, Ms. Mudget, another key witness for the prosecution, admitted to heavy methamphetamine use and its effects on her memory, including black outs. (ECF No. 11-10 at PageID.2509–10.)

In regards to Petitioner's argument that he should have been allowed an expert witness to rebut the testimony of Detective Wolters, the brief testimony that Wolters provided on the effects of methamphetamine use on memory was beneficial to Petitioner's defense, and indicated that it dramatically reduces a person's ability to recall information. (ECF No. 11-12 at PageID.2936.) Additionally, Detective Wolters was never qualified as an expert on methamphetamine use, and only testified to her personal experiences with methamphetamine users. (*Id.*) Accordingly, even if the Supreme Court had extended *Ake* to apply in cases on non-psychiatric experts, Petitioner would not be entitled to relief because he has failed to show that the absence of his requested expert witness resulted in an unfair trial. *See, e.g., Woodley v. Bradshaw*, 451 F. App'x 529, 535 (6th Cir. 2011); *Little v. Armontrout*, 835 F.2d 1240, 1244 (8th Cir. 1987).

Accordingly, Petitioner's fourth objection to the Magistrate Judge's recommendation is **OVERRULED.**

C.    Exclusion of Alibi Witnesses

Petitioner next claims that the state trial court violated his due process rights by denying his motion to add an alibi witness, made after the trial had started, and excluding the alibi testimony of Petitioner's parents due to sequestration violations. (ECF No. 6 at PageID.136.) Petitioner asserts that the exclusion of these witnesses violated his constitutional right to call witnesses for his defense. (*Id.*)

In *California v. Trombetta*, the Supreme Court held that "criminal defendants [must] be afforded a meaningful opportunity to present a complete defense." 467 U.S. 479, 485 (1984); *accord Crane v. Kentucky*, 476 U.S. 683, 690 (1986). This right, however, is not unlimited. In *Taylor v. Illinois*, the Supreme Court held that "[t]he accused does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence." 484 U.S. 400, 410 (1986). There, the Court rejected the petitioner's argument that the Sixth Amendment created an absolute bar on the exclusion of a surprise witness. *Id.* The Court reasoned that "[t]he adversary process could not function effectively without adherence to rules of procedure that govern the orderly presentation of facts and arguments to provide each party with a fair opportunity to assemble and submit evidence to contradict or explain the opponent's case." *Id.* at 410–11. The Supreme Court has further held that the exclusion of evidence is "unconstitutionally arbitrary or disproportionate only where it has infringed upon a weighty interest of the accused." *United States v. Scheffer*, 523 U.S. 303, 308 (1998).

### 1.    Exclusion of Witness for Untimely Notice

Turning to Petitioner's first claim, he argues that the Court denied him the opportunity to present a defense by denying his motion to add Mr. Henry Alexander as an alibi witness after trial had started. (ECF No. 1-1 at PageID.61–64.) At trial, Petitioner motioned to add Mr. Alexander to the witness list as an alibi witness for his defense. (ECF No. 11-13 at PageID.3191.) The Court denied Petitioner's motion on the grounds that he and his family knew about Mr. Alexander's potential to testify prior to trial and did not disclose that fact to the prosecution, and so the motion to add Mr. Alexander was untimely. (*Id.* at PageID.3211–13.) The Magistrate Judge found that the trial court had followed the holding of *Taylor, supra*, and therefore had not violated clearly established federal law. (ECF No. 17 at PageID.5186–87.) Petitioner's response to the Magistrate Judge's finding on this claim lacks clarity and merely reiterates his assertion that Mr. Alexander should have been allowed to testify while focusing the brunt of his argument on the Magistrate judge's determination regarding his parent's testimony. (ECF No. 18 at PageID.5215–16.) Petitioner thus fails to "pinpoint [the] portions of the magistrate's report that the district court must specifically consider" for this claim. Therefore, Petitioner's fifth objection is **OVERRULED.**

### 2.    Exclusion of Witnesses for Violation of Sequestration Order

Petitioner next claims that the Court violated his due process rights by excluding the testimony of his parents for violating the sequestration order. (ECF No. 1-1 at PageID.61–64.) During trial, the prosecution presented evidence to the Court that Mr. and Mrs. McGowan had been talking to both of their sons about what was happening in the case, what witnesses had testified to, and what witnesses were left to testify. (ECF No. 11-13 at

PageID.3213–16.) The prosecutor also presented further evidence that Mr. and Mrs. McGowan had talked to or planned to talk to several witnesses. (*Id.*) Accordingly, the Court found they had willfully violated the sequestration order and that their testimony was likely tainted. (*Id.* at PageID.3220–22.) As such, the Court ordered their testimony excluded. (*Id.* at PageID.3222.) The Magistrate Judge, once again, found that the trial court had not acted contrary to established federal law. (ECF No. 17 at PageID.5188.) Petitioner objects to the finding of the Magistrate Judge because no sequestration order or any order prohibiting Mr. and Mrs. McGowan from talking to their children appears in the record before this Court. (ECF No. 18 at PageID.5216.) Petitioner also argues that since the prosecution was allowed to call witnesses that had received plea deals, he should have been allowed to present his witnesses. (*Id.*)

Looking to the record, the trial court held a separate hearing, without the jury present, to determine if Mr. and Mrs. McGowan would be allowed to testify. (ECF No. 11-13 at PageID.3191–3222.) At this hearing, the prosecution presented evidence to the Court that Mr. and Mrs. McGowan had communicated with Petitioner, his brother Heath, and other witnesses about the case in the form of taped or recorded conversations. (*Id.* at PageID.3204–06.) After reviewing the conversation between Petitioner or his brother and their parents, the Court found that the McGowans had willfully violated the Court's sequestration order and may have attempted to influence the testimony of other witnesses. (*Id.* at PageID.3220–22.) Based on that finding, the Court excluded the McGowan's testimony. (*Id.*)

18

While in most circumstances alternative sanctions may be an appropriate remedy to a violation of a discovery or pretrial order, the Supreme Court has held that in the most severe of circumstances "preclusion [is] justified because a less severe penalty 'would perpetuate rather than limit the prejudice to the State and the harm to the adversary process.'" *Michigan v. Lucas*, 500 U.S. 145, 152 (1991) (quoting *Taylor*, 484 U.S. at 417.) In cases where the violation was willful and blatant, the severest sanctions are appropriate regardless of whether prejudice to the prosecution could be avoided through less severe ones. *See Taylor*, 484 U.S. at 417. Here, the Court finds no reason to doubt the trial court's conclusions that Mr. and Mrs. McGowan conversed with their sons about the case and witness testimony on multiple occasions during the course of trial; they talked about what witnesses had already been called, what the witnesses had said, who was going to be called, what they should say on the stand, and indicated that they intended to talk to other witnesses about what they had or were going to testify to. (ECF No. 11-13 at PageID.3191–22.) Accordingly, the state trial court's decision to exclude their testimony based on their willful violation of the sequestration order was not contrary to clearly established federal law.[1]

Petitioner's second argument fails out of the gate. Petitioner argues that since the witnesses for the prosecution had received plea deals and were likely to have "an incentive to please the prosecutor," that he should have therefore been allowed to call the witnesses

---

[1] Petitioner's argument that the sequestration order cannot be relied upon because it is not contained in the Rule 5 materials lacks merit. The relevant record clearly lays out the sequestration order's requirements and its applicability to the McGowans and their utterly willful violations of the order. (*See, e.g.*, ECF No. 6 at PageID.168–69.) No one can seriously doubt the following: 1) the McGowans were on the witness list; 2) the trial judge entered a sequestration order; 3) the McGowans clearly violated the order. The Michigan Court of Appeals characterized the violations of the order as "continuing and clearly intended to influence testimony of witnesses." (*Id.* at PageID.169.) Indeed, recordings of the McGowans plotting to exenterate the sequestration order by phone and in person in the jail during trial were relied upon by the state trial judge.

he wished to call. (*Id.*) The ability of the prosecution to present its case, however, has no bearing on whether Petitioner was given the opportunity to present a complete defense. Petitioner's parents were not prevented from testifying because they were likely to present evidence that favored the defense, but rather they were excluded because they blatantly and willfully violated the sequestration order by communicating *about the case* to Petitioner, his brother, and *other witnesses.* As the Court of Appeals held, "[w]hile defendant was prohibited from presenting the testimony at issue, he was not precluded from offering a defense. He personally testified to his alibi and presented other witnesses to corroborate his assertion that it was not present or involved in the crime." (ECF No. 6 at PageID.169.)

Simply put, "it was defendant's . . . involvement in the violation of the sequestration order that limited any presentation of his alibi defense" (*id.*), not a state court's ruling contrary to clearly established law. *Cf. Taylor*, 484 U.S. at 417.

In short, Petitioner has failed to establish that the Court acted contrary to established federal law by excluding the testimony of Mr. and Mrs. McGowan. As such, Petitioner's sixth objection is **OVERRULED.**

### D.    Failure to Order Separate Trials/Juries

Petitioner next claims that his due process rights were violated by the trial court's denial of his motion for a separate trial or jury. (ECF No. 6 at PageID.137.) Petitioner argues that since prior bad acts evidence was ruled admissible as to his codefendants but inadmissible as to himself, the Court should have ordered a separate trial or, at a minimum, separate juries. (ECF No. 1-1 at PageID.65–71.) The Magistrate Judge found that there is no Supreme Court precedent establishing a right to separate trials under the Due Process Clause

and accordingly, the trial court's refusal to sever the trial was not contrary to clearly established federal law. (ECF No. 17 at PageID.5190–93.) Petitioner argues that the case should have been decided based on the precedent set in *Zafiro v. United States*, 506 U.S. 534 (1993), and that under that precedent he was entitled to relief because he was subject to prejudice by having a joint trial.

In *Zafiro*, the Supreme Court was asked to determine if Fed. R. Crim. P. 14 required a separate trial where co-defendants were presenting mutually antagonistic defenses. There the Court determined that "[m]utually antagonistic defenses are not prejudicial per se." *Id.* at 538. The Court further held that even when actual prejudice is shown, the decision of whether to sever the trial or seek other remedies, such as providing the jury with special instructions, is left up to the discretion of the Court. *Id.* at 539. Accordingly, Petitioner's reliance on *Zafiro* is misplaced for several reasons. First, the holding in *Zafiro* is not rooted in the Due Process Clause of the Constitution, but rather in the Federal Rules of Criminal Procedure. Second, Petitioner and his co-defendants did not present mutually antagonistic defenses; quite to the contrary, they all presented essentially the same defense, that they had nothing to do with the crime. Last, even if Petitioner and his co-defendants had presented mutually antagonist defenses, the decision on whether to sever the cases would still have been within the broad discretion of the Court. Petitioner can present no Supreme Court precedent that entitles him to a separate trial as a matter of law under the Due Process Clause.

Accordingly, Petitioner has not shown that the actions of the trial court denying his motion for a separate trial was contrary to clearly established federal law and therefore, Petitioner's seventh objection is **OVERRULED.**

21

### E.    Ineffective Assistance of Counsel

Next, Petitioner claims that his attorneys, both defense and appellate, provided ineffective assistance of counsel in violation of the Sixth Amendment's guarantee to effective assistance of counsel. U.S. CONST. amend. VI. The standard for ineffective assistance of counsel, as established in *Strickland v. Washington*, requires a defendant to prove (1) that defense counsel's performance fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for the unprofessional errors, the outcome of the proceedings would have been different. 466 U.S. 668, 694 (1984). Either prong may be addressed first, and the failure to demonstrate prejudice obviates the need for the Court to address the counsel performance prong, and vice versa. *Id.* at 697. The burden is on the defendant to prove that his counsel provided ineffective assistance by a preponderance of the evidence. *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006).

When considering whether counsel's performance fell below an objective standard of reasonableness, courts must "apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Premo v. Moore*, 562 U.S. 115, 122 (2011) (citing *Strickland*, 466 U.S. at 688). The defendant has the burden to show that counsel's errors were "so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.*

To establish ineffective assistance, the defendant must show that his counsel's representation was incompetent under prevailing professional norms, not merely that it deviated from best practices or common custom, and that the conduct was not sound trial strategy. *Strickland*, 466 U.S. at 690. Courts must be highly deferential and consider the

circumstances of the attorney's conduct at the time of the performance, not with the benefit of hindsight. *Id.* at 689. It is especially difficult to challenge strategic decisions made after a thorough investigation of the relevant law and facts; such decisions are "virtually unchallengeable." *Rayborn v. United States*, 489 F. App'x 871 (6th Cir. 2012) (citing *Strickland*, 466 U.S. at 690). Defendants cannot compel their attorneys to assert even non-frivolous arguments if counsel decides not to press those points as a matter of professional judgment. *Jones v. Barnes*, 463 U.S. 745, 751 (1983).

### 1.    Ineffective Assistance of Defense Counsel

Petitioner first asserts that he suffered from ineffective assistance of defense counsel on several grounds: (1) failing to seek separate juries or separate trials; (2) failing to develop the defense that Heath acted alone in killing Mr. Marrott; (3) failing to call Diane Howell, Roger Howell and Michael Araujo as alibi witnesses; and (4) failing to object to prosecutorial misconduct or the statements of Heather Wisniewski. (ECF No. 6 at PageID.139.) The Magistrate Judge found that Petitioner had failed to show that his defense counsel deviated from the "wide range of reasonable professional assistance," *Premo*, 562 U.S. at 122 (internal quotations omitted), or actual prejudice as to all grounds claimed (ECF No. 17 at PageID.5193–5206).

As an initial matter, Petitioner did not raise any objections to the Magistrate Judge's recommendations on grounds one through three. Accordingly, the Court **ADOPTS** the Magistrate Judge's recommendations as to grounds one, two, and three.

Petitioner objects to the Magistrate Judge's finding as to ground four that Defense Counsel's failure to object to certain evidence did not amount to actual prejudice. (ECF No. 18 at PageID.5217.)

Petitioner's argues his attorneys' failure to object to the prosecutor's misconduct and the testimony of Ms. Wisniewski amounted to ineffective assistance of counsel. (ECF No. 1-1 at PageID.81–82.) As stated above, however, Petitioner's contentions that the prosecutor's arguments during closing and rebuttal amounted to prosecutorial misconduct lack any merit. *See supra* Part III.A. As such, any objection Petitioner's attorneys made against the prosecution's closing statement and rebuttal would have been futile and likely overruled. The failure to raise such a futile objection cannot be the basis for a claim of ineffective assistance of counsel. *See Harris v. United States*, 204 F.3d 681, 683 (6th Cir. 2000) (Citing *Strickland*, 466 U.S. 668). Further, since the claims of prosecutorial misconduct lacked any merit, Petitioner is unable to show that Defense Counsel's failure to object resulted in any prejudice.

Turning to Petitioner's contention that his attorneys should have objected to Ms. Wisniewski's testimony regarding domestic abuse on Petitioner's part, "in the strategic context of an entire trial, any single failure to object does not constitute error unless the information introduced is so prejudicial to a client that failure to object essentially defaults the case to the state." *Hodge v. Haeberlin*, 579 F.3d 627 (6th Cir. 2009); *accord Hutton v. Mitchell*, 839 F.3d 486, 505 (6th Cir. 2016). Here, it cannot be said that the failure to object to the single account of uncorroborated domestic abuse "essentially default[ed] the case to the state." *Id.* The statement was brief; Petitioner was on trial for felony murder as an accomplice not as the perpetrator of the violent act; and the evidence against Petitioner was

24

quite strong, as three eyewitnesses placed him at the scene of the crime. It is highly unlikely that the statement in question had any effect on the outcome of the trial.

Therefore, Petitioner has failed to show that he suffered from ineffective assistance of defense counsel and accordingly, his eighth objection is **OVERRULED.**

### 2.    Ineffective Assistance of Appellate Counsel

Finally, Petitioner claims that he received ineffective assistance of appellate counsel because his attorney failed to raise on direct appeal the issues Petitioner raises now. (ECF No. 6 at PageID.140.) Petitioner asserts that his attorney raised weak arguments on direct appeal while ignoring "meritorious issues apparent from the record . . . ." (ECF No. 1-1 at PageID.86.) The Magistrate Judge found that Petitioner had failed to show his attorney ignored clearly stronger arguments in favor of weaker ones. (ECF No 17 at PageID.5206–07.) Petitioner objects to the finding of the Magistrate Judge, reasserting that the arguments made in this petition were stronger than the arguments made by appellate counsel. (ECF No. 18 at PageID.5217–18.)

The Supreme Court has clearly established that an appellate attorney need not raise every non-frivolous argument on appeal. *Jones*, 463 U.S. at 751. Thus a petitioner who wishes to show that his appellate counsel failed to deliver effective assistance by not raising a meritorious claim has a high burden of proof. *See, e.g.*, *Smith v. Robins*, 528 U.S. 259, 288 (2000); *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986) ("Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome"). Here, Petitioner argues that appellate counsel ignored the "meritorious" issues raised in this petition and instead raised weaker arguments on direct

appeal. As shown above, however, the claims presented in this petition lack any merit. Accordingly, Petitioner has failed to show that he suffered from ineffective assistance of appellate counsel. Therefore, Petitioner's final objection is **OVERRULED.**

## IV.  Conclusion

In short, Petitioner has presented no claim for which he is entitled to relief.

### Certificate of Appealability

The Court must determine whether a certificate of appealability should be granted. 28 U.S.C. § 2253(c)(2). A certificate should issue if petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. Id. at 467. Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467.

Under *Slack*, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 529 U.S. at 484. "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of petitioner's claims. *Id.*

Examining petitioner's claims under the standard in *Slack*, a reasonable jurist would not conclude the Court's assessment of each of petitioner's claims to be debatable or wrong, particularly in light of the AEDPA deference owed to the Michigan courts. Accordingly, Petitioner's certificate of appealability is **DENIED**.

<u>ORDER</u>

For the reasons discussed in the accompanying opinion: Petitioner's objections are **OVERRULED** (ECF No. 18); the Magistrate Judge's report and recommendation is **ADOPTED** (ECF No. 17); Petitioner's petition is **DENIED** (ECF No. 6); a certificate of appealability is **DENIED**. Judgment will enter separately.

**IT IS SO ORDERED.**

**Date:** July 26, 2017          /s/ Paul L. Maloney
                           Paul L. Maloney
                           United States District Judge

27